DETROIT, TOLEDO & IRONTON RAILWAY CO., APPELLEE AND CROSS-APPELLANT, *v.* MAXINE'S POTATO SERVICE, INC., APPELLANT; ST. GERMAIN, APPELLEE AND CROSS-APPELLEE.

(No. 1792—Decided November 18, 1983.)

*Mr. Roger F. Carroll,* for appellee and cross-appellant.

*Mr. Walter V. Hines,* for appellant.

*Mr. David A. Weaver* and *Mr. Gale S. Finley,* for appellee and cross-appellee.

WEBER, J. In the spring of 1980 Joel St. Germain, a Minnesota potato farmer seeking to find a buyer for his potatoes, contacted a broker, Maxine's Potato Service, Inc. The broker found a buyer in Evans Potato Company of Springfield, Ohio. The nature of the arrangement between St. Germain and Maxine's remains uncertain, but it appears St. Germain loaded the potatoes into railroad cars bound for Springfield and signed the bills of lading.

Some portion of the potatoes was not accepted by Evans, and the railroad's unpaid freight charges on three carloads totaled $9,797.26. Subsequently, St. Ger-main paid the railroad $1,048.14, thereby reducing the outstanding balance to $8,749.12.

The Detroit, Toledo & Ironton Railway Co. filed a complaint on October 14, 1980 in the Clark County Court of Common Pleas against St. Germain, Maxine's, and Evans to recover the remaining freight charges plus prejudgment interest.

It was not until a pretrial conference in June 1982 that St. Germain raised, for the first time, the issue of *in personam* jurisdiction, whereupon the trial court granted him leave to raise this defense. On September 7, 1982, St. Germain filed a motion for leave to file an amended answer wherein he raised the defense of lack of personal jurisdiction. On the basis of this amended answer, St. Germain then filed a motion for summary judgment.

On September 1, 1982, the railroad filed a motion for summary judgment against Evans and Maxine's. Therein the railroad alleged Evans and Maxine's were respectively the consignee and consignor/shipper, as evidenced by freight waybills and affidavits, and that they were therefore liable for the freight charges.

On November 10, 1982, the trial court sustained St. Germain's motion for summary judgment, thereby dismissing him as a defendant. The court also sustained the railroad's motion for summary judgment against Evans and Maxine's in the amount of $10,698.58 for freight and interest.

Maxine's is appealing the trial court's granting of summary judgment against it. The railroad is cross-appealing the dismissal of St. Germain from the action. Evans is undergoing Chapter 11 reorganization proceedings and has not appealed.

Maxine's asserts the trial court erred in awarding summary judgment against it on the issue of liability because a genuine issue of fact existed as to Maxine's capacity in this transaction.

Under controlling law, the shipper or "consignor" is primarily liable for freight charges under a uniform straight bill of lading prescribed by the Interstate Commerce Commission unless the terms and conditions of the bill itself provide otherwise. *Southern Pacific Transp. Co. v. Commercial Metals Co.* (1982), 456 U.S. 336. See Interstate Commerce Act, Section 10101 *et seq.*, Title 49, U.S. Code; *Pittsburgh C.C. & St. L. Ry. Co. v. Fink* (1919), 250 U.S. 577, 581. Accordingly, when a consignor is in a position to execute a nonrecourse clause on such a bill and neglects to do so, he then remains primarily liable for shipment charges. See *Commercial Metals, supra.*

In its motion for summary judgment the railroad offered the bills of lading for the three shipments to establish the liability of Maxine's. In the spaces designated "shipper," St. Germain had written thereon: "Maxine's Potato Service per Joel St. Germain." Additionally, the nonrecourse provision had not been executed.

We note the sole basis for the railroad's motion for summary judgment against Maxine's was St. Germain's self-serving designation of Maxine's as "shipper" on the bills of lading.

There was no evidence presented as to whether Maxine's was "in a position" to execute the non-recourse clause on the bills of lading, as the Supreme Court found Commercial Metals to be, in *Southern Pacific Transp. Co. v. Commercial Metals, supra.* Before a party's failure to execute such a disclaimer is charged against it, it should first be determined whether the party was in fact able to "effectuate its release from liability by executing the nonrecourse clause in the bill of lading." *Id.* at 343.

The trial court apparently considered such documents conclusive of the liability of Maxine's, and applied the aforementioned law in awarding summary judgment against it. However, before such liability can attach, the factual question which necessarily must first be resolved is whether Maxine's was, in fact, a shipper/consignor in this transaction.

Maxine's asserts that St. Germain had no authority to designate Maxine's as shipper. Indeed, Maxine's asserts it did not agree to be designated as consignor/shipper nor did it represent itself as such. Maxine's contends it did not act as a principal for St. Germain, nor agree to be a guarantor for him. Maxine's alleges it acted as an independent broker only and not as a consignor or shipper.

Maxine's contends that St. Germain was in fact the shipper. Maxine's alleges that St. Germain ordered the railroad cars for the shipments. St. Germain admits he ordered the railroad cars, although he contends he did so at the direction of Maxine's.

"Consignor" is defined in Section 122, Title 49, U.S. Code, as "the person named in the bill as the person from whom the goods have been received for shipment." Additionally, a state supreme court has characterized the consignor of an interstate shipment as "the person who calls upon the carrier for transportation service." *Pennsylvania RR. Co. v. Adams Mercantile Co.* (1944), 245 Ala. 268, 270, 16 So. 2d 796, 797. The consignor has also been characterized as "the one with whom the contract of transportation is made." *In re Bills of Lading* (1919), 52 I.C.C. 671, 721, modified (1921), 64 I.C.C. 357, further modified (1922), 66 I.C.C. 63.

Thus, in determining which party was the consignor/shipper in an interstate transaction, we believe the name appearing on the bill of lading is some evidence of that party's status as the consignor/shipper. However, examination of the bill alone does not conclude the analysis, since the conduct of the parties and the circumstances surrounding the shipment should also be assessed. The party who "called upon the carrier for service" and the party from whom the carrier received the goods are valid fac-

tors to consider, as well as the name appearing on the bill.

Civ. R. 56(C), in pertinent part, provides:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, * * * affidavits * * * timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered until it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *."

Upon an appeal of a summary judgment, a reviewing court should look at the record in the light most favorable to the party who opposed the motion. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150 [66 O.O.2d 311].

Applying this principle, genuine issues existed as to material facts, *e.g.,* Maxine's capability to execute the nonrecourse clause on the bills of lading. Accordingly, the assignment of error of Maxine's is well-taken and the trial court's summary judgment against it is reversed.

In its cross-appeal, the railroad alleges the trial court erred in granting St. Germain leave to file an amended answer wherein he asserted the defense of lack of *in personam* jurisdiction and in thereafter granting St. Germain's motion for summary judgment and dismissal.

Generally, former Civ. R. 12(H) provided for waiver of defenses not therein enumerated:

"A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or if he has made no motion, by responsive pleading or an amendment thereof made as a matter of course under Rule 15(A) * * *."

Thus, lack of jurisdiction over the person is a waivable defense which is waived by failure to include it in a manner prescribed by Civ. R. 12(H). To this end, Civ. R. 12(H) was amended on July 1, 1983 to *expressly* provide for waiver of the defense of *in personam* jurisdiction, although in the instant case, the pre-amendment rule must be applied.

St. Germain failed to raise the defense of lack of *in personam* jurisdiction in a pre-answer motion. He also failed to raise the defense in his first responsive pleading — his answer of January 21, 1981. St. Germain further filed a cross-claim and an amended cross-claim against Evans and Maxine's in the court of common pleas. However, St. Germain claims that by raising the defense in his amended answer of September 7, 1982 that he presented the defense "* * * by amendment * * * as a matter of course," and was therefore within the rule.

However, Civ. R. 15(A) provides limitations on amendments made as a matter of course:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. * * *"

Since Civ. R. 15(A) allows a party to amend an answer "as a matter of course" within twenty-eight days after it was served, St. Germain could have amended his answer as a matter of course anytime before February 18, 1981 and thereby raised the defense. However, St. Germain did not attempt to amend his answer until twenty-one months after his responsive pleading. By September 7, 1982, the time for amending an answer as a matter of course had long expired for St. Germain.

In order to file his amended answer, St. Germain required leave of court, which he sought and received. However, such a court-authorized amended answer does not qualify as the type allowed by Civ. R. 12(H) as "* * * an amendment thereof made as a matter of course under Rule 15(A) * * *." See *Konigsberg* v. *Shute* (C.A. 3, 1970), 435 F. 2d 551; 4 Anderson's Ohio Civil Practice (1973), 350-352, Section 152.06. In accordance with the policy of encouraging diligence in challenging personal jurisdiction, we hold St. Germain waived the defense of lack of *in personam* jurisdiction as a matter of law by failing to timely present it. Civ. R. 12(H). Further, by filing his cross-claim and amended cross-claim, St. Germain submitted himself to the jurisdiction of the court of common pleas. Accordingly, the trial court had *in personam* jurisdiction of St. Germain. This assignment on the railroad's cross-appeal is well-taken and the judgment of the trial court by which St. Germain was dismissed is hereby reversed.

St. Germain argues alternatively the trial court's dismissal of the railroad's complaint against him was further justified on the basis of the railroad's failure to state a claim. However, St. Germain cannot argue this assertion for the first time on appeal. St. Germain premised his motion for summary judgment only upon the jurisdictional defense and made no mention of this alleged defense whatsoever. Thus, we must assume the dismissal was based on the jurisdictional ground rather than speculate as to alternative theories. Accordingly, the judgments against Maxine's and the railroad are both reversed, and the case is remanded for further proceedings consistent with this decision.

*Judgments reversed and case remanded.*

BROGAN, P.J., and WILSON, J., concur.