Charles **COVEY, Trustee for the Bankruptcy Estate of Unizicker Trucking, Inc., Plaintiff,**

v.

**CONAGRA INC., Defendant.**

**Civ. A. No. 89-K-1927.**

United States District Court, D. Colorado.

March 13, 1991.

See —— F.Supp. ——, for amended order.

Paul O. Taylor, Harris & Taylor, Minneapolis, Minn., and David S. Oppenheim, Englewood, Colo., for Covey.

Peter A. Greene, Thompson, Hine & Flory, Washington, D.C., and Terence M. Ridley, Otten, Johnson, Robinson, Neff & Ragonetti, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff is the bankruptcy trustee for Unzicker Trucking, Inc. Between January 3, and December 5, 1985, Unzicker transported shipments of freight for the defendant, ConAgra. The freight was shipped in interstate commerce under bills of lading, and freight bills. The shipping rates were contained in tariffs which were published with the Interstate Commerce Commission.

After Unzicker declared bankruptcy, its trustee audited the debtor's freight bills and discovered a discrepancy. According to the complaint, the trustee alleges Unzicker charged ConAgra less than the published tariffs Unzicker filed with the ICC. The difference between the rate collected and the rate published is $31,770.67. The trustee seeks this amount plus interest.

ConAgra disputes the claim. It raises various equitable defenses such as laches and estoppel. It also raises the legal defenses of accord and satisfaction, statute of limitations, and waiver. Finally, it raises a specific statutory argument: the published rate is "unreasonable" under the terms of 49 U.S.C. § 10701. ConAgra submits that exclusive, primary jurisdiction lies with the ICC. Therefore, it moves for an order of reference to the ICC.

In support of its argument that the rate plaintiff seeks is unreasonable, ConAgra quotes 49 U.S.C. § 10701(a):

> A rate …, classification, rule or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission … must be reasonable.

For proper determination of its reasonableness claim, ConAgra urges me to refer the issue to the ICC. According to the defendant, primary jurisdiction lies with the ICC because of that agency's "unique and specialized competence." For authority, defendant cites a "significant line" of Supreme Court decisions beginning with *Great Northern R. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922).

ConAgra's desire to be heard before the ICC is understandable. In an ICC policy statement enunciated in 1986, the commission responded to a rash of cases filed by trustees for carriers in bankruptcy. The defending shippers often argued an award of the filed rate, as opposed to the lower negotiated rate, is improper. The commission agreed. Under these circumstances, "it could be fundamentally unfair not to consider a shipper's equitable defenses to a claim for undercharges." *NITL—Petition to Institute Rule Making on Negotiated Motor Common Carrier Rates*, 3 I.C.C.2d 99, 103 (1986) (Negotiated Rates I). The commission further clarified its new policy at 5 I.C.C.2d 623 (1989) (Negotiated Rates II).

Plaintiff refers me to a different statutory provision:

> [A] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission … shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff.

49 U.S.C. § 10761(a) (1989). This provision is often referred to as the "filed rate doctrine." The doctrine provides that the rate on file with the ICC governs the legal relationship between the carrier and the shipper.

The plaintiff cites its own line of Supreme Court authority adopting the filed rate doctrine.

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable.

*Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). The rigid application of the doctrine and harsh results on the litigants are outweighed by the goal of preventing price discrimination. As the Court explained, "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier … This stringent rule prevails because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated." *Keogh v. Chicago & Northwetern R. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49–50, 67 L.Ed. 183 (1922).

ConAgra seizes on the last proviso in the quoted language from *Maxwell:* "unless found by the Commission to be unreasonable." According to the Defendant, this statement acknowledges a role for the ICC to overrule the filed rate doctrine in certain cases. From this, defendant concludes the bulk of appellate decisions hold that the filed rate doctrine is not a bar to relief from an unreasonable rate.

But ConAgra must first establish that primary jurisdiction in this case lies with the ICC. Among the important factors in applying the doctrine of primary jurisdiction are the judiciary's familiarity with the issues presented, the need for consistency in deciding the issue, and the question whether the decision involves the agency's administrative discretion. *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir.1989) (citing: *Far East Conference v. United States*, 342 U.S. 570, 574–5, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). Agency expertise may also be significant. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976).

Defendant's argument boils down to the bald conclusion that it is unreasonable for plaintiff to collect the filed rate at this late date. ConAgra recites a list of equitable and legal defenses to inflate its claim that the rate is unreasonable. Defendant hopes to float through the district court on the raft of primary jurisdiction. The doctrine, however, is not properly invoked in this manner. "The mere fact that the issue is phrased ... as a matter of reasonableness should not be determinative on the jurisdictional issue. To hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader." *United States v. Western Pac. R.R.*, 352 U.S. 59, 68–9, 77 S.Ct. 161, 167, 1 L.Ed.2d 126 (1956)

Properly understood, this case is about the vitality of the filed rate doctrine. Bolstered by recent Supreme Court authority, the doctrine is sound. In *Maislin Industries v. Primary Steel, Inc.*, —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Court reversed the ICC's Negotiated Rates I, II policies. Like the present case, *Maislin* concerned a bill for additional freight charges brought by the bankruptcy estate of a carrier. The agent of the estate sought to collect the difference between filed rate and the negotiated rate. The Supreme Court rejected the ICC's variance from the filed rate doctrine.

For a century, this Court has held that the Act, as it incorporates the filed rate doctrine, forbids as discriminatory the secret negotiation and collection of rates lower than the filed rate ... By refusing to order collection of the filed rate solely because the parties had agreed to a lower rate, the ICC has permitted the very price discrimination the Act by its terms seeks to prevent.

*Maislin*, —— U.S. at ——, 110 S.Ct. at 2768 (citations omitted). Under the filed rate doctrine as affirmed in *Maislin*, and in accord with earlier decisions of this District: *Trans–Allied Audit Company, Inc. v. Ram Trans, Inc.*, Civil No. 89–M–1498 (Matsch, J., dec. 11/13/89) and *I.C.C. v. J.B. Montgomery*, 483 F.Supp. 279 (D.Colo. 1980), the motion for order of reference is DENIED.