**Charles COVEY, Trustee for the Bankruptcy Estate of Unzicker Trucking, Inc., Plaintiff,**

v.

**CONAGRA, INC., Defendant,**

**Charles COVEY, Trustee for the Bankruptcy Estate of Unzicker Trucking, Inc., Plaintiff,**

v.

**TRUC–TRAX, Defendant.**

Civ. A. Nos. 89–K–1927, 89–K–1928.

United States District Court, D. Colorado.

May 3, 1991.

---

**6.** The complaint and amended complaint do not indicate that any of the Defendants are sued in an individual capacity.

David Oppenheim, Englewood, Colo., for plaintiff.

Peter Greene, Washington, D.C., Terence Ridley, Denver, Colo., and Paul Taylor, Bloomington, Minn., for defendants.

## AMENDED ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO REFER CASE TO ICC

KANE, Senior District Judge.

These two cases are consolidated for the purpose of ruling on the parties' motions for summary judgment. I will also address the defendants' motions for orders of reference to the Interstate Commerce Commission.

### I.

On March 12, 1991, I issued a memorandum opinion and order in *Covey v. ConAgra*, 758 F.Supp. 644 (D.Colo.1991), which denied ConAgra's motion for an order of reference to the ICC. I denied the motion on the authority of *Maislin Industries, U.S., Inc. v. Primary Steel*, —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In *Maislin*, the Supreme Court rejected the "unreasonable practices" defense raised by a shipper who objected to the practice of a bankruptcy trustee attempting to collect undercharges after auditing the freight bills from the estate. The undercharge resulted from a difference between the negotiated rate the shipper actually paid and the legal rate the carrier filed in a tariff with the ICC. Unzicker Trucking is now bankrupt, and its trustee brings these actions to collect the filed rates.

As I explained in my March 12 opinion, the Court in *Maislin* rejected the "unreasonable practice" defense because it conflicts with the filed rate doctrine. The Court, however, did not address the "unreasonable rate" defense. That question

was left "open for exploration on remand." *See id.*, 110 S.Ct. at 2767 n. 10.[1] I amend my earlier order to consider defendants' "unreasonable rate" defense, as well as the pending motions for summary judgment.

## II. *Covey v. ConAgra, 89–K–1927.*

Since the facts are set out in my earlier opinion, I will not repeat them here. Two issues will be considered: ConAgra's motion for an order of reference, and Covey's motion for summary judgment.

■ I begin with the proposition that the filed rate controls the relationship between the carrier and shipper. The carrier "may not charge or receive different compensation ... than the rate specified in the tariff. 49 U.S.C. § 10761(a) (1989). This proposition is also known as the "filed rate doctrine." The doctrine was first adopted by the Supreme Court in *Louisville & Nashville R.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915):

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable.

ConAgra correctly argues the filed rate must be reasonable, and the filed rate provides for such review. In other words, the tariff or "filed" rate is the "legal" rate. But the legal rate is not the "lawful" rate unless it is reasonable.

■ ConAgra argues the filed rate in this case is unreasonable and violates 49 U.S.C. § 10701(a) (1988):

> A rate ..., classification, rule or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of the title must be reasonable.

According to ConAgra, the entity which determines the reasonableness of a rate is the ICC; the reasonableness issue is within the ICC's primary jurisdiction. *See Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922).

In evaluating ConAgra's unreasonable rate defense, I am wary of its use to avoid the filed rate doctrine as articulated by the Court in *Maislin.* Further, I note the delay and complications the bankruptcy process must endure when the estate is referred to an agency, and the trustee must litigate the merits in a third forum. The Supreme Court, however, left open the issue of a reasonable rate defense in cases like these, and I must consider it here.

■ I reject, however, the idea that a party, simply by mouthing the magic words, "unreasonable rate," wins an automatic trip to the ICC. The party must properly invoke the primary jurisdiction of the agency. The doctrine is invoked when a claim, originally cognizable in the courts, "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The Tenth Circuit directed lower courts to look at the judiciary's familiarity with the issue presented, the need for consistency, and the agency's administrative discretion. *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir.1989). Agency expertise is also important. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976).

I freely recognize the ICC's ability and authority to determine whether a rate is unreasonable. My refusal to grant automatic reference to the ICC is not because I disagree that the ICC has primary jurisdiction over a *bona fide* rate dispute. Contrary to ConAgra's assertion, my decision is not an exercise of discretion by the trial court. Procedurally, however, I conclude

---

1. On remand to the district court, I note that the shipper's motion to refer the proceedings to the ICC to resolve its reasonable rate defense was granted. *See Maislin Indus., U.S., Inc. v. Pri-mary Steel, Inc.*, No. 85–0021–CV–W–JWO–5 (W.D.Mo. Nov. 21, 1990) (unpublished disposition available at 1990 Westlaw 264536).

ConAgra has not plead sufficient grounds to warrant a referral.

■ The filed rate is not discredited merely because the defendants allege it is unreasonable. Unless the ICC concludes otherwise, I presume the filed rates are reasonable.[2] In any proceeding on the issue of reasonableness before the ICC, the person attacking the rate bears the burden of proving unreasonableness. *New Orleans & Lower Coast R.R. Co. v. International Proteins Corp.*, 514 F.Supp. 46, 49 (E.D.La.1981) (citing *Swift & Co. v. United States*, 343 U.S. 373, 382, 72 S.Ct. 716, 721, 96 L.Ed. 1008 (1952)). Hence, the defendants seeking an order of reference must make a threshold showing of unreasonableness before I will invoke the primary jurisdiction of the ICC.

My conclusion finds support in *Western Pacific*. The issue in *Western Pacific* was one of tariff construction; the item shipped was napalm gel. Since the compound lacked bursters and fuses, the parties clashed on whether the shipment was an "incendiary bomb" or simply "gasoline in steel drums." The Court spoke at length about the doctrine of primary jurisdiction. Although the Court ultimately concluded the issues were best resolved by ICC given its expertise, the Court stated,

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165. There is no doubt the ICC and not the courts possesses the expertise to determine a reasonable rate from point A to point B. The district court, however, refers a matter to the ICC when it believes the agency's rate determination will assist in resolving the entire dispute.

Initially, there is a role for the courts to determine the need for the ICC's involve-ment. Preliminary review in the court deters frivolous delay without infringing on the ICC's primary jurisdiction.

The unreasonable rate defense was not created to insure a role for the ICC, and a preliminary review does not interfere with the ICC's "law making power over certain aspects of commercial relations." *Western Pacific*, 352 U.S. at 65, 77 S.Ct. at 166. In my earlier order, I cited Justice Harlan's familiar admonition:

> [T]he mere fact that the issue is phrased in one instance as a matter of tariff construction and in the other as a matter of reasonableness should not be determinative on the jurisdictional issue. To hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader.

*Id.* at 68–69, 77 S.Ct. at 167. I recognize that in *Western Pacific* the government, claiming a lower rate, argued the wrong tariff was applied, and ConAgra in this case argues the tariff is unreasonable. I cite this passage for the following principle: the way the dispute is plead does not control the jurisdictional issue. ConAgra's gloss on the text is deficient. It states, "What the court was saying there is that the ICC's primary jurisdiction to determine issues of reasonableness cannot be defeated by characterizing them as issues of construction." (Df.'s Motion to Reconsider at 5).

The quoted passage simply indicates the court is not bound by the way the parties framed the issues. The court examined the issue as a whole to look beyond the parties' characterization. Primary jurisdiction is not dependent on what the parties state in their pleadings. The court determines when an issue requires the ICC's expertise. After an extensive discussion about the specific facts of the case, the Court in *Western Pacific* found it was necessary to refer the dispute to the ICC. This comports with the case-by-case decision making

---

2. The mere fact the parties negotiated a lower rate than the one filed with the ICC is not sufficient to establish a prima facie case that the rate is unreasonable. Lower negotiated rates could indicate among other things price discrimination or a poor profit margin. Unzicker, after all, is bankrupt.

process in ruling on motions for reference. Requiring defendants to make a preliminary showing of unreasonableness facilitates the process. Defendants are given leave to amend their motions for reference to comply with this opinion. The parties are directed to 49 U.S.C. § 10701(e) for a sample of the kind of information which is relevant although I do not expect near the detail the parties would include in a presentation to the ICC.

Finally, I postpone ruling on Covey's motion for summary judgment. ConAgra's motion for reference to the ICC on its reasonable rate defense is still alive. After the motion is resolved, I will rule on Covey's summary judgment motion.

III. *Covey v. Truc–Trax, 89–K–1928.*

■ This matter also includes a motion by defendant, Truc–Trax for summary judgment and an order of reference to the ICC. Bankruptcy trustee Covey commenced this action on November 6, 1989 to collect tariff undercharges from Truc–Trax. On August 23, 1990, Truc–Trax moved for summary judgment on the grounds that it was acting simply as a broker, and not a consignor, with respect to the transactions at issue and was not liable for the undercharges. In a separate motion, Truc–Trax moved for an order referring this case to the ICC for a determination whether Unzicker's published tariff rates, upon which Covey now seeks to recover, are reasonable. Covey opposes both motions.

In its motion for summary judgment, Truc–Trax contends that Unzicker's agreement for the payment of the shipping charges was with the shipper, Loveland Foods Continental Grain Co., and not Truc–Trax, who acted only as a broker. Truc–Trax supports this statement by attaching to its motion a copy of one of the bills of lading which shows Loveland Foods as the shipper. Truc–Trax has also submitted the affidavit of its owner, Charles Weart, in which Weart states that

[d]efendant was not the shipper or consignee on any of the subject shipments. It acted only as an intermediary between the shippers and UTI. To the extent it paid UTI on shipments it was only relaying the freight charges paid by the shippers. The bill of lading attached to the Motion For Summary Judgment is representative of the bills involved in the shipments.

Covey argues that, despite this information, there are still material issues of fact as to which party was the shipper and summary judgment is therefore improper.

■ A "bill of lading is the basic transportation contract between shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 342, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). Unless the bill of lading provides otherwise, the consignor remains primarily liable for freight charges. *Id.* at 343, 102 S.Ct. at 1820.

[I]n determining which party was the consignor/shipper in an interstate transaction, ... the name appearing on the bill of lading is some evidence of that party's status as the consignor/shipper. However, examination of the bill alone does not conclude the analysis, since the conduct of the parties and the circumstances surrounding the shipment should also be assessed. The party who "called upon the carrier for service" and the party from whom the carrier received the goods are valid factors to consider, as well as the name appearing on the bill.

*Detroit, Toledo & Ironton Ry. Co. v. Maxine's Potato Serv., Inc.,* 13 Ohio App.3d 157, 468 N.E.2d 361, 364 (1983); *see also* 13 C.J.S. *Carriers* § 477(b) at 429 (1990). Furthermore, at least one court has held that the fact that the carrier knows that a party is an agent for a disclosed principal does not prevent the party from being held liable to the carrier for charges as the consignor. *See Freight Operations, Inc. v. Hunterdon County Democrat, Inc.,* 184 N.J.Super. 556, 446 A.2d 1226, 1228 (1982). Since a party's appearance as the shipper on a bill of lading is not conclusive as its status as a consignor, Truc–Trax's motion for summary judgment must be denied.

Truc–Trax also moves for referral of this case to the ICC because it asserts as a defense the unreasonableness of Unzicker's filed tariff rate. As explained in part II, a valid unreasonable rate defense is within the ICC's primary jurisdiction. This case adds a new wrinkle: should the unreasonable rate claim be asserted by the shipper in a separate reparations action or as a defense to a rate undercharge action. Truc–Trax also requests this case be stayed pending the ICC's determination of the reasonableness of Unzicker's filed rate. Covey argues that the Supreme Court's ruling in *T.I.M.E., Inc. v. United States*, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), and its recent decision in *Maislin* preclude this procedure.

■ In *T.I.M.E., Inc.*, the Supreme Court held that the Motor Carrier Act does not create a cause of action for the recovery of allegedly unreasonable past rates by a shipper. The holding *T.I.M.E., Inc.*, however, was abrogated by Congress' subsequent amendment of the Motor Carrier Act to provide a cause of action for reparations. *See* 49 U.S.C.A. § 11705(b)(3) (1988); *Maislin Industries*, 110 S.Ct. at 2776 n. 12 (dissenting opinion). Covey argues nevertheless that *T.I.M.E., Inc.* represents good law that a shipper may only assert a claim for rate unreasonableness in a separate reparations action, and not as a defense to a rate undercharge action. That argument was rejected persuasively by the court in *Delta Traffic Serv., Inc. v. Transtop, Inc.*, 902 F.2d 101, 106 (1st Cir.1990), and I adopt its rationale here.

Covey also places admittedly tenuous reliance on the Supreme Court's recent decision in *Maislin*. There the Court held that a shipper may not assert in a rate undercharge action the equitable defense that the carrier committed an unreasonable practice by attempting to recover shipping charges in excess of the rate negotiated by the parties. *See* 110 S.Ct. at 2768–2771.

The majority opinion in *Maislin* did not address the decision in *T.I.M.E., Inc.*, nor did it resolve the question whether the shipper may assert as a defense the unreasonableness of the carrier's filed *rate* (as opposed to its unreasonable *practice* in deviating from a negotiated rate).

Although the Supreme Court has yet to speak directly on this question, I again take guidance from the First Circuit's reasoning in *Delta Traffic Service*. In that case, the court noted that

[b]ecause shippers may assert the unreasonableness of a rate as a grounds for recovery in a reparations suit, courts have permitted shippers to assert this same ground as a *defense* in a *carrier's suit* to collect the filed ("legal") rate. In such cases, the shipper may "ask for a stay of the court proceedings and then ask the Commission to declare the [higher rate] ... unreasonable." This legal regime tends to (1) prevent carriers from favoring particular shippers by charging a lower-than-filed-tariff rate, (2) to protect shippers from having to pay a higher-than-reasonable rate, and (3) to permit the relevant legal body, the ICC, to make the relevant expert determinations.

902 F.2d at 104–05 (citations omitted). In so holding, the court in *Delta Traffic Service* found that the only case to the contrary, *Supreme Beef Processors, Inc. v. Yaquinto (In re Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388 (5th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990),[3] relied on case law which did not support its rationale. 902 F.2d at 105–105. Although the *Delta Traffic* decision was entered several months before the Supreme Court's ruling in *Maislin*, the court later entered an order reaffirming its holding on this issue, but vacating its ruling on the shipper's unreasonable practice defense based on *Maislin*. 902 F.2d at 112.[4]

---

**3.** In *In re Caravan Refrigerated Cargo,* the court rejected the shipper's attempt to "put the brakes on the filed tariff doctrine" by staying a rate action pending the ICC's ruling on the shipper's rate reasonableness defense. 864 F.2d at 392 n. 6.

**4.** Truc–Trax cites *West Coast Truck Lines, Inc. v. American Indus., Inc.,* 893 F.2d 229 (9th Cir. 1989), in support of its argument for referral to the ICC. In *West Coast,* however, the court upheld the district court's stay of a rate undercharge action to permit the ICC to consider the

IV.

Accordingly,

IT IS ORDERED Truc–Trax's motion for summary judgment on the issue of its non-liability as a broker is DENIED.

IT IS FURTHER ORDERED this matter will proceed for a determination whether Truc–Trax is a consignor and must pay the undercharges. If it is a consignor, Truc–Trax will then be given the opportunity to amend its complaint to support its motion for an order of reference to the ICC.

IT IS FURTHER ORDERED ConAgra is given leave to amend its complaint to bolster its unreasonable rate defenses with a preliminary showing Unzicker's filed rates are unreasonable.

IT IS FURTHER ORDERED my March 12 "Memorandum Opinion and Order" in 89–K–1927 is amended to include this discussion of the parties' unreasonable rate defense.

shipper's unreasonable practice defense, not an unreasonable rate defense. Thus, *West Coast* involved the same negotiated rate defense now barred by *Maislin* and is not persuasive.