**Charles COVEY, Trustee for the bankruptcy estate of Unzicker Trucking, Inc., Plaintiff,**

v.

**CONAGRA, INC., Defendant.**

**Civ. A. 89–K–1927.**

United States District Court, D. Colorado.

April 7, 1992.

David S. Oppenheimn, Englewood, Colo., Paul O. Taylor, Bloomington, Minn., for plaintiff.

Terence M. Ridley, Otten, Johnson, et al., Denver, Colo., Peter A. Greene, Thompson, Hine & Flory, Washington, D.C., for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR REFERRAL TO ICC

KANE, Senior District Judge.

This is a rate undercharge action pursuant to the Interstate Commerce Act (ICA).

*See* 49 U.S.C. § 10761(a). The plaintiff, Charles Covey, trustee for the bankruptcy estate of Unzicker Trucking, Inc., seeks from defendant ConAgra, Inc., a shipper, the difference between the negotiated rate ConAgra actually paid and the tariff rate Unzicker filed with the Interstate Commerce Commission (ICC). On March 13, 1991, I issued a memorandum opinion and order denying ConAgra's motion for reference to the Interstate Commerce Commission (ICC). *See* 758 F.Supp. 644 (D.Colo. 1991). I held that ConAgra had not justified referring this matter to the ICC under the doctrine of primary jurisdiction by simply pleading an unreasonable rate defense. On May 3, 1991, I amended that order. *See* 763 F.Supp. 479 (D.Colo.1991). I adhered to my earlier ruling that ConAgra had not plead sufficient grounds to warrant a referral on the unreasonable rate issue, but granted it leave to amend its pleadings to make a threshold showing of unreasonableness.

Before me are the parties competing motions for summary judgment and ConAgra's motion for reference to the ICC. In his motion filed April 25, 1991, Covey contends that he is entitled to judgment as a matter of law because the parties were bound by the filed tariff rate and ConAgra's assertion that the filed rate is unreasonable does not constitute a defense to an undercharge action. He also requests prejudgment interest. ConAgra responds that it is entitled to summary judgment because Unzicker was acting as a contract carrier, not a common carrier, and therefore the negotiated rate prevails. It also claims that if the court finds that Unzicker was acting as a common carrier, it has made a showing sufficient to warrant reference of the unreasonable rate issue to the ICC based upon submissions in support of its motion for summary judgment. The relevant facts are set forth in my earlier opinions in this case, and I will not repeat them here.

I first address ConAgra's contention that Unzicker was acting as a contract carrier, not a common carrier, since it could

be dispositive of the action. In the past, both contract and common carriers were subject to the tariff filing requirements of the ICA. *See Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.*, 761 F.Supp. 194, 199 (D.Mass.1991). In 1983, however, "[t]he ICC, through exercise of its statutory authority, ... exempted motor contract carriers from the requirements of the filed rate doctrine." *Atlantis Express, Inc. v. Standard Trans. Servs., Inc.*, 955 F.2d 529, 533 (8th Cir.1992) (footnote omitted); *see Exemption of Motor Contract Carriers from Tariff Filing Requirements*, 133 M.C.C. 150 (1983), *aff'd sub nom., Central & S. Motor Freight Tariff Ass'n v. United States*, 757 F.2d 301 (D.C.Cir.), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). Hence, if Unzicker provided services to ConAgra pursuant to its contract carrier authority, the filed rate doctrine does not apply.

 The ICA defines a contract carrier as "a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person." 49 U.S.C. § 10102(15)(B). There are two requirements a carrier must satisfy to be considered a contract carrier: "the requirement of 'continuing agreements,' and the requirement that the agreements meet the 'distinct needs' of the shipper." *Dan Barclay*, 761 F.Supp. at 200. The first requirement is further defined by regulation, which states:

> No contract carrier by motor vehicle, as defined in 49 U.S.C. § 10102(15) shall transport property for hire in interstate or foreign commerce except under spe-

cial and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated time in contrast to contracts of carriage governing individual shipments, and copies of which contracts or agreements shall be preserved by the carriers parties thereto so long as such contracts or agreements are in force and for at least one year thereafter.

49 C.F.R. § 1053.1 (1991).[1]

 ConAgra faces several barriers in seeking to establish contract carriage. First, it had no written contract with Unzicker. Both the ICC and a number of courts have concluded that "[t]he threshold requirement [for contract carriage] imposed by the Commission in the current regulations is a formal written contract." *Contracts for Transportation of Property*, Ex Parte No. MC–198, 1991 WL 188244, at *6 (I.C.C. August 27, 1991); *see also Dan Barclay, Inc.*, 761 F.Supp. at 201, 203; *Cooper v. California Consolidated Enter., Inc. (In re Carolina Motor Express, Inc.)*, 84 B.R. 979, 984–85 (Bankr.W.D.N.C.1988), *appeal decided*, 949 F.2d 107 (4th Cir. 1991).

ConAgra responds that absence of a written contract does not preclude finding that Unzicker was acting pursuant to its contract carrier authority, and that "it is appropriate to infer the regulatory status of the service performed by Unzicker for ConAgra from the conduct of the parties." (Mem.Supp.Def.'s Cross Mot.Summ.J. at 4.) While there is some support for ConAgra's assertion that a written contract is not an absolute requirement,[2] even considering

---

**1.** Although the ICC is considering the repeal of these regulations, I must apply the regulations as they existed at the time the alleged contract was made and the carriage occurred. *See Dan Barclay*, 761 F.Supp. at 201; *Global Transportation Servs., Inc. v. United Shipping Co. (In re United Shipping Co.)*, 134 B.R. 359, 364 n. 4 (Bankr.D.Minn.1991).

**2.** In *Atlantis Express, Inc.*, the court took note of a recent ICC ruling in which the agency indi-

cated that it had departed from its view that a contract must be in writing to satisfy the requirements of 49 C.F.R. § 1053. *See* 955 F.2d 529, 533. In that ruling, the ICC stated that it "does not 'invalidate contracts for contract carriage, and it is not our policy to find a lack of contract carriage based on simple, technical oversights or omissions.'" *See Contracts for Transportation of Property*, Ex Parte No. MC–198, 1991 WL 62174 (I.C.C.), at *10 (I.C.C. Feb.

the parties conduct in this case, I cannot conclude that a continuing agreement for contract carriage was created.

ConAgra supports its position with the affidavit of Kenneth E. Stanton, ConAgra's traffic supervisor. Stanton states that he received a telephone call from Bob Pfankuch, vice-president of TR Transportation, Inc., on May 30, 1985. TR Transportation is a property broker in Denver, Colorado. Pfankuch "asked for the opportunity to arrange for the transportation of [ConAgra's] truckload shipments of flour from [its] Commerce City mill," (Stanton Aff. ¶ 6), and he orally quoted rates for several destinations. The next day, Pfankuch sent Stanton a letter confirming those rates. In that letter, Pfankuch wrote that his company "was interested in truck load and volume traffic out of the Denver area," that "[w]e would like you to consider the [itemized] truck load rates," that the company "was interested in handling [ConAgra's] volume shipments, and that he was sure that Stanton would "find these rates very competitive." (*Id.*, Ex. A.) In addition, Pfankuch advised Stanton that he would call again to discuss any questions after Stanton had "the opportunity to look over this material." (*Id.*) On June 24, 1985, ConAgra used TR Transportation's services for the first time, and TR Transportation in turn contracted with Unzicker to perform the underlying transportation.

Nothing in this letter indicates that ConAgra was in any way bound to use TR Transportation's services, much less those of Unzicker Trucker. Likewise, there is no evidence that a series of shipments were contemplated over a specific period of time. The weight of the evidence shows that Pfankuch's telephone call and follow-up letter were nothing more than a quotation letter and a unilateral offer to provide transportation brokerage services with carriage at specified rates. This does not

constitute a bilateral contract, imposing specific obligations on both carrier and shipper or shippers, covering a series of shipments during a stated period of time. *See* 49 C.F.R. § 1053.1 (1991); *Dan Barclay, Inc.*, 761 F.Supp. at 201 (mere offer is not a bilateral contract demonstrating contract carriage); *In re Carolina Motor Express, Inc.*, 84 B.R. at 984 ("a quotation letter, or other written offer is precluded as not 'bilateral,' and not imposing specific obligations upon the shippers."). *Compare Global Transportation Servs., Inc. v. United Shipping Co. (In re United Shipping Co.)*, 134 B.R. 359, 365 (Bankr. D.Minn.1991) (rate schedules submitted in response to shipper's written promise of delivery and containing reciprocal promise of carriage constituted contract).

Second, there is no showing that Unzicker was to provide any form of "specialized service" to serve ConAgra's "distinct need" under the second requirement for contract carriage.

> A distinct need is defined as a need for more specialized services than a common carrier can provide. Services are considered "more specialized" to the extent that they "[differ] in quality, in priority, in control by the shipper, or in some other significant respect, from the service a common carrier holds out to the public at large.

*Dan Barclay, Inc.*, 761 F.Supp. at 200 (citations omitted); *see also Enscoe, Inc. v. Weicker Transfer & Storage Co.*, 689 F.2d 921, 926 (10th Cir.1982) (shipper's assumption of certain burdens of transportation inconsistent with common carriage); *In re United Shipping Co.*, 134 B.R. at 366 (carrier's agreement to carry all shipments tendered by shipper, regardless of number, indicated contract carriage). ConAgra has made no showing whatsoever that the shipments in question were specialized or that the transportation Unzicker provided was

---

20, 1991). Although the *Atlantis Express* court found that this ambiguous statement did not allow it to "ignore past ICC decisions that have consistently required a written contract," it nevertheless held that it justified referring to the ICC the issue of contract carriage, with the hope that the ICC "will articulate an explanation for

its action that clarifies the above statement." 955 F.2d 529, 534. In the instant case, referral of this issue to the ICC is not necessary because, as explained below, the written and unwritten agreements between parties do not indicate contract carriage was intended.

in any way unusual. Alternatively, ConAgra does not allege that Unzicker assigned vehicles for its exclusive use during a continuous period of time, another indicia of contract carriage. *See* 49 U.S.C. § 10102(15)(B)(i). Accordingly, the undisputed facts lead me to conclude that Unzicker was not operating as a contract carrier for the shipments in question, and that ConAgra's motion for summary judgment must be denied.

■ Turning to Covey's motion for summary judgment, I find that this motion must also be denied in part. Covey first argues that the unreasonable rate defense cannot be asserted in a rate undercharge action. He claims that this issue can only be raised in a reparations action initiated by the shipper after it has paid the undercharge. I adhere to my original ruling on this issue. In my May 3 order, I followed the logic of the First Circuit in *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101, 106 (1st Cir.1990), which I found was the better reasoned approach despite authority to the contrary. *See* 763 F.Supp. at 484. Other courts agree. *See Atlantis Express, Inc.*, 955 F.2d 529, 536 (permitting shipper to assert unreasonable rate defense in undercharge action when it had no adequate reparations remedy due to carrier's liquidation).

■ Covey further argues that even if the unreasonableness of Unzicker's rates can constitute a defense, ConAgra has failed to make a prima facie showing of unreasonableness. I disagree. While ConAgra may not ultimately prevail on this issue, it has presented evidence that the tariff rates in effect at the time of the shipments were well above the rates it paid to other carriers for the same service to the same destinations. In addition, ConAgra notes that the rates paid in 1991 are only slightly higher than the rates it negotiated with Unzicker in 1985 and are much lower than the tariff rates demanded in this action. I find that these allegations are sufficient to make a threshold showing of unreasonableness justifying referral of this issue to the ICC. *See Atlantis Express, Inc.*, 955 F.2d 529, 538 (comparison of rates between plaintiff and other carriers offering the same or similar services to the same destinations sufficient showing to justify referral); *Oneida Motor Freight, Inc. v. Ormond Shops, Inc.*, 126 B.R. 431, 442 (D.N.J.1991); *In re Sharm Express, Inc.*, 122 B.R. 999, 1004–05 (D.Minn.1991). Consequently, Covey's motion for summary judgment is denied as to the arguments relating assertion of the unreasonable rate defense and reference to the ICC. ConAgra's motion for reference of this matter to the ICC for a determination whether Unzicker's rates were unreasonable is granted.

■ The final issue raised in Covey's motion for summary judgment concerns the estate's entitlement to prejudgment interest if it prevails in this action. Prejudgment interest is commonly awarded in rate undercharge actions, *see Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.*, 931 F.2d 5, 7 (2d Cir.1991); *Inman Freight Sys., Inc. v. Olin Corp.*, 807 F.2d 117, 121 (8th Cir.1986), and is a matter in the court's discretion, *Miller v. Have–A–Portion, Inc. (In re Total Transp., Inc.)*, 98 B.R. 954 (Bankr.D.Minn.1989). Prejudgment interest is designed to make the carrier whole by awarding it the "value of the use of the money owed for the period prior to judgment," *Southern Pac. Co. v. Miller Abattoir Co.*, 454 F.2d 357, 362 (3d Cir. 1972), thereby denying to the delinquent shipper an "interest-free loan" during the time full payment was delayed, *see Consolidated Rail Corp. v. Certainteed Corp.*, 835 F.2d 474, 478 (3d Cir.1987).

■ Following the majority rule, I find that prejudgment interest should be awarded if the plaintiff prevails in this case. However, I hold that the equities of this case dictate that interest should accrue from the date the complaint was filed, and not from the date of carriage. *See Atlantis Express v. Unicorn Transp. Sys., Inc.*, 764 F.Supp. 135, 139 (D.Minn.1991) (prejudgment interest to accrue from date complaint filed since parties could not have foreseen the outcome of Supreme Court's decision in *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct.

2759, 111 L.Ed.2d 94 (1990)); *In re Sharm Express, Inc.*, 127 B.R. at 625 (affirming award of prejudgment interest commencing at the start of proceeding); *In re Total Transp., Inc.*, 98 B.R. at 956 (awarding interest from time adversary proceeding commenced).

Accordingly, IT IS ORDERED that Covey's motion for summary judgment is GRANTED as to the issue of prejudgment interest and DENIED in all other respects, and

IT IS FURTHER ORDERED that Con-Agra's motion for summary judgment is DENIED, and

IT IS FURTHER ORDERED that Con-Agra's motion for reference of this matter to the ICC is GRANTED as to the issue of the unreasonableness of Unzicker's filed tariff rates.