**David E. LEWIS, as Trustee of the Estate of Edson Express, Inc., Debtor, Plaintiff,**

v.

**M & F SUPPLY, Defendant.**

Civ. A. No. 93–F–775.

United States District Court, D. Colorado.

July 8, 1993.

Lee E. Lucero, Lucero & Associates, P.C., Aurora, CO, for plaintiff.

David E. Driggers, Jones & Keller, P.C., Denver, CO, for defendant.

## ORDER REGARDING STAY OF PROCEEDINGS

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving liability for payment due for transportation of goods in interstate commerce. This matter comes before the Court on Defendant's motion for stay and reference to the Interstate Commerce Commission ("ICC"). Jurisdiction is based on 28 U.S.C.A. § 1331. The litigants have fully briefed the matter. For the reasons stated below, the motion is granted in part.

1. All factual recitations in this order are con-

## I.

From approximately December 19, 1988 through January 5, 1989, Debtor Edson Express, Inc. ("Edson") provided transportation services at the request, or for the benefit, of Defendant M & F Supply ("M & F") as a common carrier by motor vehicle in interstate commerce.[1] The transportation services relate to shipments between M & F's facility in Albuquerque, New Mexico and one of M & F's customers in Phoenix, Arizona. Edson operated under authority issued by the ICC. During the period Edson provided transportation services, Edson had various tariffs on file with the ICC; those tariffs had been accepted for filing by the ICC and had been allowed to become effective. Edson billed M & F for its services and M & F paid the bills without question.

On January 22, 1991, Edson filed for Chapter 11 bankruptcy protection. Plaintiff, David E. Lewis, was named trustee of Edson's estate. Lewis hired a collection and audit service to determine whether Edson had complied with the Interstate Commerce Act. 49 U.S.C.A. § 10761 (West Supp.1992). According to Lewis, the audit revealed that M & F paid less than the rate it should have paid for the services rendered. M & F contends the interpretation of the applicable tariff and the reasonableness of the newly claimed rate are issues within the primary jurisdiction of the ICC and therefore ought be referred to the ICC.

## II.

The question before the Court for purposes of this motion is whether the issues of this case can be said to incorporate the reasonableness of Edson's new claimed rate. M & F contends that insofar as rate unreasonableness is a defense to a claim of rate violation, reasonableness is an issue and the ICC is the appropriate forum for its resolution.

### A. Rate Reasonableness

 The reasonableness of a rate or practice of a carrier can only be decided by the ICC. *Great Northern Railway Co. v. Mer-*

tained in the litigants' pleadings.

562

*chant's Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). The reasonableness of such a rate or practice is the type of issue within the special competence of an administrative body under the doctrine of primary jurisdiction. *See United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

■ In a filed rate action, the rule against deviations from a filed and published tariff is "undeniably strict." *Milne Truck Lines, Inc. v. Makita U.S.A., Inc.,* 970 F.2d 564, 569 (9th Cir.1992). However, the filed rate doctrine also provides that rates are not enforceable if they are unreasonable. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 128, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). Once reasonableness is made an issue, we must address whether it can be asserted as a defense or, in this case, a counterclaim.

The Supreme Court very recently settled the greater part of this issue. In *Reiter v. Cooper,* —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1992), the Court held that while technically the unreasonableness of a tariff rate may not be asserted as a 'defense' to an action to recover charges based on that rate, "a defendant having a cause of action against a plaintiff may—indeed, often must—assert that cause of action as a counterclaim." *Id.* at ——, 113 S.Ct. at 1217 (noting that defendant's counterclaim need only relate to the same shipments for which plaintiff seeks to collect). The Court stated it makes no difference that the defendants mistakenly denominate their counterclaim as a defense; Federal Rule of Civil Procedure 8(c) provides that a district court, "if justice so requires, shall treat the pleading as if there had been a proper designation." *Id.* One might also come to the same conclusion based simply upon the confusion that has long prevailed in this area of law.

The Court also clarified two other issues regarding referral to the ICC. First, the Court held there is no "pay first" rule requiring that a counterclaim plaintiff pay the tariffs before challenging their reasonableness. *Id.* at ——, 113 S.Ct. at 1219; *see also F.P. Corp. v. SIPCO, Inc.,* No. C91–4084, Order at 3, 1993 WL 393042 (N.D.Iowa Mar. 12, 1993).

Second, the Court explained that the district court does not, strictly speaking, 'refer' a matter to the ICC, because there is no referral mechanism in the Interstate Commerce Act. Instead, the district court stays proceedings in order to give the party requesting review by the ICC a "reasonable opportunity within which to apply to the Commission for a ruling." *Reiter,* —— U.S. at —— n. 3, 113 S.Ct. at 1220 n. 3 (internal citation omitted).

■ Even before *Reiter,* the weight of authority and the most persuasive reasoning was on the side of allowing rate unreasonableness as a defense in an action for collection of undercharges. We agree with the First and Ninth Circuits that referral of rate unreasonableness defenses to the ICC will not undermine the filed rate doctrine. *Milne,* 970 F.2d at 570; *Delta Traffic Serv., Inc. v. Transtop Incorporated,* 902 F.2d 101, 105–06 (1st Cir.1990). Allowing shippers to stay district court proceedings protects them and the carriers and preserves the authority of the ICC to ensure uniform and reasonable rates. *Milne,* 970 F.2d at 570; Finally, in the event the carrier prevails before the ICC, prejudgment interest will be available. *See Milne,* 970 F.2d at 570; *Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.,* 931 F.2d 5, 7 (2d Cir.1991).

**B. Prima Facie Showing of Unreasonableness**

■ Before the issue of rate unreasonableness can be referred to the ICC, the party challenging the rate must make a threshold showing that the rate at issue is unreasonable. *Milne,* 970 F.2d at 570; *Covey v. ConAgra,* 763 F.Supp. 479, 482–83 (D.Colo.1991). Relevant factors in the determination include "relevant rate comparisons, a carrier's proffer of a particular rate, and whether the rate would have moved the traffic had it been asserted at the time the shipments took place." *Matter of Brown Transport Truckload, Inc.,* 144 B.R. 183, 187 (Bankr.N.D.Ga.1992). One common method of making a prima facie showing of unreasonableness is to provide affidavit testimony demonstrating a significant disparity between the rates sought to be charged by the carrier and the rates charged by competing

carriers at the time in question. *See, e.g., Vining v. The Eureka Co.,* 1992 WL 370520, at \*2 (N.D.Ill. Dec. 8, 1992) (holding eighty percent increase in demanded rates and showing that original rates were competitive with other carriers was prima facie unreasonable); *Matter of Brown,* 144 B.R. at 187 (noting defendant met burden of showing unreasonableness of rate sought by showing carrier's original rates were similar to those of competing carriers); *Bur–Cold Express, Inc. v. Parker Hannifin Corp.,* 808 F.Supp. 553, 558 (S.D.Tex.1992) (observing that documents referring to rates charged by other carriers supported defendant's position that filed tariff rate was in fact unreasonable); *Covey v. ConAgra,* 788 F.Supp. 1160, 1164 (D.Colo.1992) (holding prima facie showing of unreasonableness made by presenting evidence that tariff rates in effect at time of shipments were well above rates paid to other carriers for same service).

## III.

■ The facts surrounding the tariff and its interpretation are somewhat unclear; because we direct that the reasonableness of the rates now charged should be resolved by the ICC, we think the most efficient result would be to allow the ICC to resolve the interpretation of the tariff as well.

■ M & F has provided evidence and an affidavit by Michael Bange, president of Champion Transportation Services, Inc., in which he states that the rates Lewis now seeks to charge are as much as 436% higher than the amount originally billed by Edson. Mr. Bange also states that Edson published and filed other tariff rates in the same general range as those originally quoted and charged to M & F. The rates Lewis now seeks on behalf of Edson, Mr. Bange concludes, would therefore not have "moved the traffic." We conclude M & F has made out a prima facie case of unreasonableness. Accordingly, the issues of rate reasonableness and tariff interpretation in this case are referred to the ICC.

## IV.

Accordingly, it is ordered that:

(1) Defendant's Motion for Stay and Referral to the Interstate Commerce Commission, filed June 21, 1993, is GRANTED IN PART. This matter being properly within the jurisdiction of the ICC, M & F shall be allowed to apply to the ICC for a ruling on the issue of the tariff's interpretation and, if necessary, the reasonableness of the rate sought to be imposed by Lewis on M & F in this action.

(2) The complaint and cause of action in this matter are DISMISSED WITHOUT PREJUDICE.