**MOBIL OIL CORPORATION,**
**Plaintiff-Appellee,**

v.

**UNITED STATES DEPARTMENT OF ENERGY and James B. Edwards, Secretary, Defendants-Appellants.**

No. 2–35.

Temporary Emergency Court of Appeals.

Argued June 17, 1981.

Decided Aug. 7, 1981.

Daniel Joseph, Akin, Gump, Strauss, Hauer & Feld, Washington, D. C. (R. Bruce McLean, Harry R. Silver, Joseph T. Casey, Jr., and David A. Holzworth, Washington, D. C., Charles S. Lindberg, William C.

Streets and Gail F. Schultz, Fairfax, Va., on the brief), for plaintiff-appellee Mobil Oil Corp.

Kenneth L. Bachman, Jr., Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., with whom Sara D. Schotland, Eugene M. Goott and Mark N. Duvall, Washington, D. C., were on the brief for intervenor Tosco Corp.

David W. Caruthers, Baltimore, Md., of counsel, on the brief for amicus curiae Crown Central Petroleum Corp.

Richard P. Noland and Robert R. Morrow, Sutherland, Ashbill & Brennan, Washington, D. C., on the brief for amicus curiae Texas City Refining, Inc.

Karen S. Bedell and Jamie Replogle, Shank, Irwin, Conant, Williamson & Grevelle, Washington, D. C., on the brief for amicus curiae Hunt Oil Co.

Edwin Jason Dryer and Michael R. Bromwich, Foley, Lardner, Hollabaugh & Jacobs, Washington, D. C., on the brief for amicus curiae Independent Refiners Ass'n of America.

Nancy C. Crisman, U. S. Dept. of Energy, Washington, D. C. (Thomas H. Kemp, Samuel Soopper, Washington, D. C., Marcia Sowles and Robert C. Powers, on the brief), for defendants-appellants.

Before METZNER, MAXWELL and LACEY, Judges.

METZNER, Judge.

The Department of Energy (DOE) appeals from an order of the United States District Court for the Northern District of New York, 520 F.Supp. 420 (D.C.) (Munson, J.), granting Mobil Oil Corporation (Mobil) a preliminary injunction enjoining DOE from issuing any further Entitlements Notices and from requiring Mobil to comply with any such notices.

The court found that Mobil would suffer irreparable harm if DOE is permitted to issue their Entitlements Notices covering the period January 1–28, 1981.

The Entitlements Notices which were enjoined are an integral part of the Entitlements Program (Program). That Program was created to maintain equitable distribution of price-controlled crude oil throughout the petroleum industry. The Program was a necessary procedure to cure imbalances resulting from the imposition of price and allocation controls on petroleum products under the Emergency Petroleum Allocation Act (EPAA).

For a detailed discussion of the Program, see *Cities Service Co. v. Federal Energy Administration*, 529 F.2d 1016 (Em.App. 1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976), and *Pasco, Inc. v. Federal Energy Administration*, 525 F.2d 1391 (Em.App.1975).

As the extreme energy crisis passed, many aspects of the price and allocation regulations were put on standby status. Finally, on January 28, 1981, President Reagan signed an Executive Order directing immediate decontrol of all remaining crude oil and refined petroleum products, and revoking all regulations governing those products. Executive Order 12287, 46 Fed.Reg. 9909 (1/30/81).

However, that order specifically provided that the Secretary of Energy "may . . . adopt such regulations and take such actions as he deems necessary to implement this Order, including the promulgation of entitlements notices for periods prior to this Order and the establishment of a mechanism for entitlements adjustments for periods prior to this Order."

As of the date of the Executive Order, Entitlements Notices for December 1980 and January 1–28, 1980, had not yet been issued.

Mobil offers data gleaned from reports furnished to DOE (10 C.F.R. § 211.66) to argue that large quantities of price-controlled crude oil have "disappeared" from the Entitlements Program due to refiners' manipulation of these regulations. Mobil asks that DOE be prevented from finalizing the obligations of the participating refiners under the Program until all price-controlled crude oil is accounted for.

An "entitlement" in essence is a license to refine a barrel of price-controlled crude oil. Each month each refiner is given a number of entitlements equal to the National Domestic Crude Oil Supply Ratio (DOSR) multiplied by the volume of crude oil runs-to-stills reported by the refiner in that month. 10 C.F.R. § 211.67(a)(1). The DOSR is computed, also on a monthly basis, as the ratio of all refiners' reported receipts of price-controlled crude oil to all refiners' crude oil runs-to-stills. 10 C.F.R. § 211.62. If a refiner's reported receipts of price-controlled crude oil exceed the number of entitlements received under the above formula, a sufficient number of entitlements must be purchased by the refiner to cover the excess. If a refiner's reported receipts of price-controlled crude are less than the number of entitlements designated to the refiner by DOE, then that refiner must sell the excess entitlements. 10 C.F.R. § 211.67(b), (c).

DOE also sets the price of the entitlements to be purchased and sold. It does not match up buyers with sellers. The agency merely assigns the obligation to buy or sell entitlements and leaves it to the refiners to comply. Historic trading relationships have arisen between refiners who are traditionally in the position of buying entitlements and those who must traditionally sell entitlements.

The notices are published within about two months of the subject month, and may include adjustments for errors, exception relief or recertification as determined by DOE.

■ It is unnecessary to review the merits of Mobil's explanations of how it sustains the contentions it advances. This court finds that Mobil has failed to make a clear showing that it will suffer irreparable harm if an injunction does not issue. *Triebwasser & Katz v. American Telephone & Telegraph Company*, 535 F.2d 1356, 1359 (2d Cir. 1976).

Mobil has not shown that issuance of the notice will place it in a position which precludes ultimate recovery, through judicial or administrative proceedings, of losses al-

legedly traced to previous erroneous entitlements notices.

The standard for determining whether a party has shown irreparable injury is founded upon the court's ability to ultimately grant an effective remedy. The traditional standard is set forth in *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir.1958), where the court said:

> "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

Temporary loss of income, recoverable upon successful termination of the litigation, will not usually constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974).

There are at least three avenues of administrative relief available to Mobil. On February 10, 1981, Mobil petitioned DOE's Economic Regulatory Administration (ERA) to institute a rulemaking proceeding to amend the entitlements regulations to account for all price-controlled crude oil. ERA has not yet acted on this petition.

On March 12, 1981, Mobil appealed its obligations under the Entitlements Notices covering December 1980 to the Office of Hearings and Appeals (OHA), alleging the same defects as claimed in the instant litigation, and asking that the December Notice be remanded to ERA for recalculation. An interlocutory order issued on June 4, 1981 (46 Fed.Reg. 32661 (June 24, 1981)), proposed that ERA be required to gather information from each refiner to ascertain how much price-controlled crude oil has disappeared from the Program. However, on July 8, 1981, subsequent to the argument of the appeal before this court, OHA determined that it lacked jurisdiction to hear the appeal because Mobil in effect was seeking an amendment to the rules. This order of OHA is a final order subject to judicial review.

Subsequent to the argument of this appeal, ERA issued a Final Rule to comply with the suggestion of the Executive Order that a mechanism be established to adjust entitlements obligations for periods prior to decontrol. 10 C.F.R. § 211.69, added July 9, 1981, 46 Fed.Reg. 36092, July 13, 1981. The rule provided for a final "clean-up" list, effectively ending the Entitlements Program; and for a self-executing mechanism intended to account for judicial and administrative determinations made after the August 15, 1981 reporting date for the final list. If Mobil is dissatisfied with this Final Rule, it is free to file an administrative appeal from this rulemaking. 10 C.F.R. § 205.160(b); 5 U.S.C. § 553.

Thus it is clear at this writing that Mobil has remedies which will give it an opportunity to have its claims reviewed and adjudicated. There is no conceivable reason why established and orderly procedures should be bypassed. Furthermore, the nature of the claim and the proof are more appropriately considered in the first instance by the administrative agency.

There is, of course, a time problem in view of the expiration on September 30, 1981, of the statutory authority for the control program. 15 U.S.C. § 760g. The court is mindful of the savings clause in that statute. However, at this point we are not prepared to discuss the scope of that clause.

The court is aware of prior situations in which the agency seems to have been slow in discharging its functions. *E. g., Marathon Oil Co. v. Department of Energy*, 642 F.2d 436, 439 (Em.App.1981). We express the hope that this matter will be expeditiously disposed of because of the nature of the claims made by Mobil.

The important nature of the problem raised by Mobil is attested to by OHA, a division within DOE, with expertise in this area. In its opinion of July 8, 1981, referred to above, it made the following observations:

> "Based upon our review of the entire record in this proceeding we conclude

that the problems and issues presented by Mobil are matters of great significance to the Entitlements Program and should be carefully considered by the appropriate officials of the Department of Energy (DOE)." (p. 1)

"Although we have in essence no jurisdiction to grant Mobil's appeal, we do find that Mobil has raised serious questions concerning ERA's administration of the Entitlements Program." (p. 19)

\*　　\*　　\*　　\*　　\*　　\*

". . . we are particularly disturbed that such a dispute exists nearly one-half year after decontrol. . . . Although ERA has attempted to discredit Mobil's method of quantitative analysis of the evidence, the ERA apparently lacks knowledge of the degree to which upstream stockpiling of crude oil and the use of time exchanges increased towards the end of the program as Mobil alleges. Moreover, as far as we know, ERA has shown no inclination to obtain such knowledge." (pp. 19–20)

\*　　\*　　\*　　\*　　\*　　\*

". . . we believe it incumbent upon ERA to attempt to exercise its broad rulemaking discretion in an informed and rational manner consistent with the President's Order and the relevant statutory objectives." (p. 20) (Footnotes omitted.)

With the finding that Mobil has failed to show irreparable harm, we need not reach the question of the construction of Section 211 of the Economic Stabilization Act as to the permissible scope of the injunction.

The order is reversed and the motion for a preliminary injunction is denied.