Robert E. **BRIZENDINE, Trustee on behalf of the Bankruptcy Estate of Brown Transport Truckload, Inc., Brown Transport Corp., Thurston Motor Lines, Inc., Plaintiffs,**

v.

The **RELIABLE CORPORATION and Globe Business Furniture of Tennessee, Inc., Defendants.**

No. 92 C 395.

United States District Court, N.D. Illinois, E.D.

Feb. 17, 1993.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

The trustee in bankruptcy for three trucking companies has sued a shipper, The

Reliable Corporation (Reliable), for freight undercharges, contending that Reliable paid less than the filed rates on numerous shipments. The amount involved is less than $17,000. The trustee now moves for summary judgment. Defendant has filed a cross-motion for summary judgment or, in the alternative, for referral to the Interstate Commerce Commission (I.C.C.). It contends that the carrier acted as a contract, not a common, carrier, and that the shipper is therefore exempt from the filed rate doctrine. Alternatively, it seeks a referral to the I.C.C. for a determination of the reasonableness of the rates if the shipments were common carriage.

■ Brown Transport Corp. (Brown) was authorized to act both as a contract carrier and a common carrier. It had a contract with Reliable that recites that it is for contract trucking services and that contract provides for the rates actually charged. The filed rate doctrine is, however, alive and well. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). A shipper and carrier cannot avoid the obligations imposed by that doctrine merely by agreeing that their arrangement is contract carriage if, in fact, it is not. The trustee contends that it is beyond reasonable dispute that the arrangement was for common, not contract, carriage. His expert supports that contention. Defendant's expert disagrees. Defendant suggests, as well, that the contract issue could be decided by the I.C.C., but it concedes it can be decided here. Given the effort that has gone into these motions and the rather modest amount involved, we see no reason to require the parties to start again in another forum. We decide it here. We deny plaintiff's motion and grant defendant's motion for summary judgment.

The trustee's motion is based upon the conclusion that the written contract between the parties is insufficient to support a contract carriage arrangement. If we look solely to the written contract, the plaintiff may be right. The Motor Carrier Act defines "motor contract carrier" as

a person providing motor vehicle transportation of property for compensations under continuing agreements with one or more persons

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B) (1988).

■ Those requirements, and their regulatory amplification, were explained in part in *Brizendine v. Baldwin Hardware Corp.*, No. 91–6800, slip op. at 7, 1992 WL 209980 (E.D.Penn., August 24, 1992):

A motor carrier must satisfy two requirements to be considered a contract carrier: the requirement that the agreements meet the "distinct needs" of the shipper and the requirement of "continuing agreements." *Dan Barclay [Inc. v. Stewart & Stevenson Services]* 761 F.Supp. [194] at 200 [ (D.Mass.1991) ]. To fulfill the "distinct needs" requirement, a party must show a need "for a different or a more select or a more specialized service" than a common carrier can provide. *Interstate Commerce Comm'n v. J–T Transp. Co.*, 368 U.S. 81, 91 [82 S.Ct. 204, 210, 7 L.Ed.2d 147] (1961). Services may be considered more specialized to the extent that they differ "in quality, in priority, in control by the shipper, or in some other significant respect, from the service a common carrier holds out to the public at large." *Dan Barclay*, 761 F.Supp. at 200, *quoting Dixie Midwest Express, Inc., Extension–General Commodities*, 132 M.C.C. 794 (February 3, 1982). In respect to the "continuing agreements" requirement, the I.C.C. enacted a regulation defining continuing agreements as follows:

"No contract carrier by motor vehicle as defined in 49 U.S.C. § 10012 [10102](15) shall transport property for hire … except under special and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both car-

rier and shipper or shippers, shall cover a series of shipments during a stated period."

49 C.F.R. § 1053.1 (1991).

In addition, contract carriage can be established by the assignment of motor vehicles for a continuing period of time for the exclusive use of the shipper. *See Security Services, Inc. v. Johnson Matthey, Inc.,* No. 91–6699, 1992 WL 176497 (E.D.Penn., July 15, 1992).

There is a written contract between Brown and Globe Business Furniture which arranged for Reliable's shipments. Brown therein agrees to "make all reasonable effort to have the required equipment available" but does not designate specific equipment. The shipper designates Brown as the preferred carrier, but its obligation to ship via Brown is limited to a minimum of 50,000 pounds, not much more than one trailer. The contract is from year-to-year but may be terminated in 30 days' written notice. Perhaps that is not enough to create a contract carriage relationship.

■ We look, though, not only to the contract but to the actual relationship. Presumably the trustee could justifiably complain about undercharges even if the contract spelled out a classic contract carriage relationship, but that was not the way the parties did business. Plaintiff recognizes that we must look to substance as well as form, as indeed he must. In the wake of the change in recent years from regulation to competition, the I.C.C. has now dropped the requirement that there be any written contract at all. Contract carriers of property were exempted from the filed rate doctrine in 1983, *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd sub nom. Central & Southern Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.1985), *cert. den.* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985), and the written contract requirement was recently repealed, *Contracts for Transportation of Property,* Ex Parte No. MC–198, 1992 WL 142273 (I.C.C.), 8 I.C.C.2d 520 (June 17, 1992). That latter ruling directed

that we rely upon the totality of circumstances.

■ Those circumstances are set forth in the affidavit of Cindy Reese, the Traffic Assistant for Globe Business Furniture (Globe), which worked out the arrangement for, among others, Reliable as its customer. Those circumstances included a continuing relationship with Brown, rates based upon a single rate tariff so as to simplify rating and billing, reduced and certain shipping rates comparable to those otherwise available elsewhere, thousands of shipments, a pool of at least five dropped trailers at Globe's facility, daily pickup and delivery (including Saturdays) before midnight, and monthly reports by Brown of its operational performance. They demonstrate that equipment was dedicated and that distinct needs were being met on a committed basis over a continuing period. And that is enough. *In re United Shipping Co.,* 134 B.R. 359 (Bankr.D.Minn.1991).

■ Trustees in bankruptcy do have an obligation to recapture for the bankrupt estate as much as they reasonably can. When, however, a carrier with a contract carrier permit and a shipper in good faith enter into a contract for contract carriage and both perform over an extended period pursuant to that arrangement, we should not look with favor upon a later effort by the carrier to change the rules on the ground that the written contract did not sufficiently spell out an arrangement for contract carriage, even though that was the arrangement in fact and in intention. *See General Mills, Inc.—Petition for Declaratory Order—Certain Rates and Practices of United Shipping Co., Inc.,* No. 40525, 1992 WL 57551 (I.C.C.), 8 I.C.C.2d 313 (1992).