**In re ROBERTS CARRIER CORP., Debtor.**

**Paul E. JENNINGS, Trustee, Plaintiff,**

v.

**TAMAQUA CABLE PRODUCTS CORP., Defendant.**

**Bankruptcy No. 390–10391.
Adv. No. 392–0475A.**

United States Bankruptcy Court, M.D. Tennessee.

Aug. 13, 1993.

Paul E. Jennings, Paul E. Jennings Law Offices, P.C., Nashville, TN, Trustee and for Trustee.

Phillip North, North & Gideon, Nashville, TN, for Tamaqua Cable Products Corp.

## *MEMORANDUM*

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the "contract carrier" and "rate reasonableness" issues in these carrier undercharge adversary proceedings should be referred to the Interstate Commerce Commission under the doctrine of primary jurisdiction. Referral of the contract carrier and rate reasonableness issues is denied. The following are findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

### I.

The debtor in this Chapter 7 case was a commercial carrier. This adversary proceeding consolidates several lawsuits by the Chapter 7 trustee against shippers that hired the debtor before bankruptcy. The trustee alleges that the debtor was a common carrier and that the defendant shippers were undercharged at rates less than the debtor's common carrier rates filed at the Interstate Commerce Commission ("ICC"). The trustee seeks to recover the undercharges for the benefit of all creditors.

The shippers raise one defense and one counterclaim:

1. The shippers argue that the debtor was a "contract carrier," rather than a "common carrier," at the time it performed services. If this defense is proven, the shippers were not bound by the common carrier rates filed with the ICC and the trustee would be precluded from recovering (nonexistent) undercharges. Interstate Commerce Commission, Ex Parte No. MC-165, *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150, 1983 WL 42429, 1983 MCC LEXIS 21 (May 17, 1983), *aff'd sub nom., Cent. & S. Motor Freight Tariff Ass'n. v. United States,* 757 F.2d 301 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *Vining v. Rock Wool Mfg. Co. (In re Steve D. Thompson Trucking, Inc.),* 989 F.2d 1424, 1428 n. 3, 1434 n. 22 (5th Cir.1993).

2. Alternatively, the shippers counterclaim [1] that, even if the debtor was a common carrier, the debtor's filed rates were unreasonable. If the debtor's filed common carrier rates were unreasonable, then they are unenforceable against the defendant shippers. *Louisville & N.R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *Maislin Ind. v. Primary Steel, Inc.,* 497 U.S. 116, 128, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94 (1990).

The Chapter 7 trustee and one of the shipper defendants, Tamaqua Cable Products Corporation ("Tamaqua"), have filed cross-motions for summary judgment raising a preliminary forum selection question. Tamaqua asserts that the "contract carrier" issue and the "rate reasonableness" issue should be referred to the ICC under the doctrine of primary jurisdiction. The trustee opposes referral to the ICC.

## II.

"The doctrine of primary jurisdiction ... is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. West-*

*ern Pac. R.R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It

applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*Id.* at 64, 77 S.Ct. at 165 (citation omitted). Factors to be considered in applying the doctrine are "whether the issues of fact raised in the case are not within the conventional experience of judges; or whether the issues of fact require the exercise of administrative discretion, or require uniformity and consistency in the regulation of the business entrusted to a particular agency." *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1377 (10th Cir.1989) (citing *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). A court should "refer[ ] a matter to the ICC when it believes the agency's ... determination will assist in resolving the entire dispute." *Covey v. ConAgra, Inc.,* 763 F.Supp. 479, 482 (D.Colo.1991). A "court is not required to defer factual issues to an agency under the doctrine of primary jurisdiction if those factual issues are of the sort that the court routinely considers." *Marshall,* 874 F.2d at 1377.

■ The question whether this debtor was a "contract carrier" or a "common carrier" is a run-of-the-mill legal question not obviously within the special competence of the ICC. Whether a particular relationship between a shipper and a carrier is

---

**1.** The Supreme Court defined this cause of action as a counterclaim in *Reiter v. Cooper,* —

U.S. ——, ——, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993).

"contractual" or "common" is fact-laden. The development and presentation of relevant facts is the sort of thing that courts do in every contract dispute. The statutory definition, found at 49 U.S.C. § 10102(15) (1988), has been interpreted and applied by many courts. *See Security Servs., Inc. v. Johnson Matthey, Inc.,* No. 91–6699, 1992 WL 176497 (E.D.Pa. July 15, 1992); *Brizendine v. Beatrice/Hunt–Wesson, Inc. (In re Brown Transp. Truckload, Inc.),* 142 B.R. 536 (Bankr.N.D.Ga.1992); *Brizendine v. Reliable Corp.,* 152 B.R. 224 (N.D.Ill.1993); *Barclay, Inc. v. Stewart & Stevenson Serv., Inc.,* 761 F.Supp. 194 (D.Mass.1991); *Global Transp. Servs., Inc. v. United Shipping Co. (In re United Shipping Co.),* 134 B.R. 359 (Bankr. D.Minn.1991). Determining whether the relationships between this debtor and these shippers was contract carriage or common carriage does not implicate uniformity or consistency considerations—the "contract carrier" issue turns on the facts of each specific case and consequently is not of much precedential value. Tamaqua has cited no issue of fact that requires the exercise of administrative discretion, as opposed to the ordinary application of law to contested facts—the stuff that courts do every day.

The majority of courts that have addressed the question whether to refer a "contract carrier" issue to the ICC have concluded *not* to refer. *See Security Serv., Inc. v. Johnson Matthey, Inc.,* No. 91–6699, 1992 WL 176497 (E.D.Pa. July 15, 1992); *Brizendine v. Reliable Corp.,* 152 B.R. 224 (N.D.Ill.1993); *Brizendine v. Beatrice/Hunt–Wesson, Inc. (In re Brown Transp. Truckload, Inc.),* 142 B.R. 536 (Bankr.N.D.Ga.1992); *Global Transp. Servs., Inc. v. United Shipping Co. (In re United Shipping Co.),* 134 B.R. 359 (Bankr.D.Minn.1991); *Dan Barclay, Inc. v. Stewart & Stevenson Serv., Inc.,* 761 F.Supp. 194 (D.Mass.1991). As one court explained:

> The general jurisdiction of the I.C.C. does not bar the court from determining whether the parties operated pursuant to

contract or common carriage.... Determination of this type of issue requires the court to interpret and apply the statute which defines contract carriage and well established principles of contract law. Such a task is within the purview of the court and does not require the technical expertise of which the agency is the repository.

*Security Serv., Inc. v. Johnson Matthey, Inc.,* No. 91–6699, 1992 WL 176497, at *2 (E.D.Pa. July 15, 1992) (citations omitted).

Reported cases that have referred the contract carrier issue to the ICC were decided during a period when the ICC had created confusion over its own standards for distinguishing contract from common carriage. Prior to repeal on May 5, 1992,[2] the Motor Contract Carrier Regulations of the ICC required that contract carriage arrangements be in writing and meet other specified technical requirements. *See* Contracts for Transp. of Property, 49 C.F.R. Part 1053 (1980) (repealed 1992). For some time prior to May of 1992, the ICC had been retreating from this requirement of a written contract. Upon repeal, the ICC replaced the written contract requirement and the technical standards of 49 C.F.R. Part 1053 with a "totality of the circumstances" standard. *Interstate Commerce Commission, Ex Parte No. MC–198, Contracts for Transp. of Property,* 1992 WL 113532, 1992 MCC LEXIS 59, at *17–18, 8 I.C.C.2d 520, 529 (May 5, 1992). Finding "considerable confusion as to what standards now apply in determining contract carriages," one judge of the United States District Court for the Eastern District of Pennsylvania referred two "contract carriage" cases to the ICC after the repeal of 49 C.F.R. Part 1053. *See Brizendine v. Baldwin Hardware Corp.,* No. 91–6800, 1992 WL 209980, at *3, 4 (E.D.Pa. Aug. 24, 1992); *F.P. Corp. v. Ken Way Transp., Inc.,* 821 F.Supp. 1032, 1036 (E.D.Pa.1993). Another judge of the same court found no confusion and held that resolution of the contract carriage question is "a task ... within the purview of the court and does not require the technical expertise of which

---

**2.** The repeal became effective on June 20, 1992.

the agency is the repository." *Security Serv., Inc. v. Johnson Matthey, Inc.*, No. 91–6699, 1992 WL 176497, at *2 (E.D.Pa. July 15, 1992). Another case, *Atlantis Express, Inc. v. Standard Transp. Servs., Inc.*, 955 F.2d 529 (8th Cir.1992), was decided approximately four months before the repeal of 49 C.F.R. Part 1053, during the period in which the ICC was retreating from the requirement of a written contract. The ICC had already instituted a proceeding to consider the repeal of Part 1053, stating that " '[t]he Commission does not "invalidate" contracts for contract carriage, and it is not our policy to find a lack of contract carriage based on simple, technical oversights or omissions.' " *Atlantis*, 955 F.2d at 533 (quoting *Interstate Commerce Commission, Ex Parte No. MC–198, Contracts for Transp. of Property*, 1991 WL 62174, 1991 MCC LEXIS 16, at *12 (Feb. 20, 1991)). The Eighth Circuit found the ICC's statements "ambiguous" and referred the contract carriage issue to the ICC for that reason. *Atlantis*, 955 F.2d at 534.

The repeal of 49 C.F.R. Part 1053 and the substitution by the ICC of a "totality of the circumstances" standard underscores the ordinary judicial undertaking involved in determining whether a relationship is contract or common carriage. The technical agency criteria have been abandoned by the ICC, and contract carrier issues are determined based on all facts relevant to the statutory definitions. Since the repeal of 49 C.F.R. Part 1053, most courts have refused to refer the contract carriage issue to the ICC. *See Security Serv., Inc. v. Johnson Matthey, Inc.*, No. 91–6699, 1992 WL 176497 (E.D.Pa. July 15, 1992); *Brizendine v. Reliable Corp.*, 152 B.R. 224 (N.D.Ill.1993); *Brizendine v. Beatrice/Hunt–Wesson, Inc. (In re Brown Transp. Truckload, Inc.)*, 142 B.R. 536 (Bankr.N.D.Ga.1992). The "totality of the circumstances" test is well within the competence of courts generally and is especially familiar to bankruptcy courts. *See, e.g., Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033–34 (6th Cir.1988) ("totality of the circumstances" test applies to "good faith" requirement of § 1325(a)(3) of the Bankruptcy Code); *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir.1993) ("totality of the circumstances" test applies to dismissal of bankruptcy case for bad faith under § 1307(c)). Tamaqua has not explained what special expertise the ICC might offer in this area; nor has Tamaqua explained how this court's application of a statute to the facts of these cases will disrupt the exercise of the ICC's authority. Referral of the contract carrier issue is not appropriate.

### III.

In a motor common carrier's suit to collect filed tariff rates, a shipper may raise the "unreasonable rate" issue as a counterclaim. *Reiter v. Cooper*, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). In such a case, exhaustion of administrative remedies is not required. That is, the shipper may initially present its unreasonable rate claim to a court, rather than to the ICC. *Id.* —— U.S. at ——, 113 S.Ct. at 1220.

Several courts have concluded that the issue of rate reasonableness is within the ICC's primary jurisdiction and must be referred to the ICC. *See Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir.1992), *modified*, 990 F.2d 184 (5th Cir.1993); *Clements v. SRB Tech Transp. (In re RFI Transp., Inc.)*, 122 B.R. 124 (D.Colo.1990); *In re American Freight Sys.*, No. 91–4031–S, 1992 WL 381104 (D.Kan. Nov. 20, 1992). Courts declining to refer the issue to the ICC, have done so where the party requesting referral failed to meet its threshold burden to show rate unreasonableness. *See Covey v. ConAgra, Inc.*, 763 F.Supp. 479 (D.Colo. 1991); *Motor Carrier Audit & Collection Co. v. Sloan Valve Co.*, No. 89 C 4839, 1991 WL 38704 (N.D.Ill. Mar. 21, 1991). *See also Bergquist v. LaSalle–Deitch Co. (In re Sharm Express, Inc.)*, 127 B.R. 620 (D.Minn.1991) (affirming bankruptcy court's withdrawal of referral where shipper failed to act timely to bring the referred case before the ICC).

Many courts have held that "[t]o justify referral to the ICC, the shipper must at least make a threshold showing that the filed rates are unreasonable." *Brizendine v. Baldwin Hardware Corp.*, No. 91–6800, 1992 WL 209980, at *5 (E.D.Pa. Aug. 24, 1992). *Accord F.P. Corp. v. Ken Way Transp., Inc.*, 821 F.Supp. 1032 (E.D.Pa. 1993); *Delta Traffic Serv. v. Transtop, Inc.*, 902 F.2d 101 (1st Cir.1990); *Bergquist v. Twin Modal, Inc. (In re Sharm Express, Inc.)*, No. 4–91–32, 1991 WL 156573 (D.Minn. Aug. 7, 1991); *Brizendine v. Sandmeyer Steel Co.*, No. 92–0772, 1992 WL 203326 (E.D.Pa. Aug. 13, 1992); *Robbins v. Nekoosa Papers, Inc.*, No. G85–355, 1986 WL 20752 (W.D.Mich. Aug. 28, 1986); *Milne Truck Lines, Inc. v. Makita U.S.A., Inc.*, 970 F.2d 564 (9th Cir.1992); *Horn's Motor Express, Inc. v. Harrisburg Paper Co.*, 765 F.Supp. 211 (M.D.Pa.1991); *Bergquist v. 7/24 Freight Sales, Inc. (In re Sharm Express, Inc.)*, 122 B.R. 999 (D.Minn.1991); *Covey v. ConAgra, Inc.*, 758 F.Supp. 644 (D.Colo.1991), *modified*, 763 F.Supp. 479 (D.Colo.1991). *See also United States v. Western Pac. R.R.*, 352 U.S. 59, 68–9, 77 S.Ct. 161, 167, 1 L.Ed.2d 126 (1956) ("[T]he mere fact that the issue is phrased … as a matter of reasonableness should not be determinative on the jurisdictional issue. To hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader."); *Motor Carrier Audit & Collection Co. v. Sloan Valve Co.*, No. 89 C 4839, 1991 WL 38704, at *4 (N.D.Ill. Mar. 21, 1991) ("Absent some proof which shows an effective rate reasonableness decision could result from referral, it would be an abuse of discretion for this Court to refer the case to the Interstate Commerce Commission."); *Vining v. Sweetheart Cup Co.*, No. 91 C 5381, 1993 WL 22686, at *2 (N.D.Ill. Feb. 1, 1993) ("[M]ore than the mere conclusory assertion that a rate is unreasonable is required. A party seeking referral to the ICC must make a threshold showing that the ICC could find the filed rate unreasonable." (citation omitted)); *Oneida Motor Freight, Inc. v. Ormond Shops, Inc.*, 126 B.R. 431, 442 (D.N.J.1991) ("[T]he proper test in determining whether referral to the ICC is appropriate under the doctrine of primary jurisdiction is not whether the party requesting referral has submitted sufficient evidence to prevail…. Rather, a party seeking referral to the ICC must substantiate a challenge to the reasonableness of a filed rate so as to render it more than a bare allegation.").

To decide whether defendants meet the threshold evidentiary requirement for referral of the unreasonableness issue to the ICC, courts have considered the ICC's criteria for determining rate reasonableness. These criteria include " '(a) relevant rate comparisons, (b) a carrier's proffer of a particular rate, (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place, (d) the class rates for like traffic, and (e) tariff analysis.' " *F.P. Corp. v. Ken Way Transp., Inc.*, 821 F.Supp. 1032, 1038–39 (E.D.Pa.1993) (quoting Interstate Commerce Commission, Ex Parte No. 177 (Sub–No. 2), *Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement*, 8 I.C.C.2d 61, 74, 1991 WL 174898, at *8, 1991 MCC LEXIS 144, at *26 (Aug. 15, 1991)). *Accord Vining v. Sweetheart Cup Co., Inc.*, No. 91 C 5381, 1993 WL 22686, at *2 (N.D.Ill. Feb. 1, 1993) (Affidavits of "rate and tariff experts," which concluded that the filed rates were unreasonable, constituted sufficient evidence for referral.); *Vining v. Eureka Co.*, No. 91 C 5366, 1992 WL 370520, at *2 (N.D.Ill. Dec. 8, 1992) (Affidavit of tariff expert, who found the negotiated contract rate to be competitive with the market rates, was sufficient evidence for referral.); *Brizendine v. Southern Wipers, Inc. (In re Brown Transp. Truckload, Inc.)*, 144 B.R. 183, 187 (Bankr.N.D.Ga.1992) (Affidavits indicating "significant disparity between the filed rates sought to be charged and the rates charged by competing carriers … is sufficient to warrant referral to the ICC."); *Bur–Cold Express, Inc. v. Parker Hannifin Corp.*, 808 F.Supp. 553, 558–59 (S.D.Tex.1992) (Defendant met its burden of raising issue of reasonableness when it presented evidence of rate comparisons.); *Atlantis Express, Inc. v. Standard*

*Transp. Serv., Inc.*, 955 F.2d 529, 537–38 (8th Cir.1992) ("[T]he ICC's criteria for determining reasonableness [is] highly probative of what evidence supports referral. . . . [R]elevant factors include whether the filed rate would have moved the traffic, and how the carrier's rates compare with competitively set rates for the same traffic—especially those rates offered by healthy (nonbankrupt) carriers."); *Oneida Motor Freight, Inc. v. Ormond Shops, Inc.*, 126 B.R. 431, 442–43 (D.N.J.1991) (Evidence that a carrier's rates substantially exceeded the rates of competitors is sufficient to warrant referral to the ICC.).

Tamaqua has offered evidence in support of its rate unreasonableness claim. The affidavit of Carl J. Guzik, Tamaqua's "Traffic Manager" since 1975, states (without rebuttal) that Tamaqua's negotiated rate with Roberts Carrier reflected a competitive contract rate available from other carriers at that time. Tamaqua also submitted a comparison of rate schedules from two other carriers used by Tamaqua during the same period.

Tamaqua's evidence satisfies the "threshold showing" requirement. *See Oneida Motor Freight, Inc. v. Ormond Shops, Inc.*, 126 B.R. 431, 442 (D.N.J.1991); *Atlantis Express, Inc. v. Standard Transp. Serv., Inc.*, 955 F.2d 529, 537–38 (8th Cir.1992); *Bur–Cold Express, Inc. v. Parker Hannifin Corp.*, 808 F.Supp. 553, 558–59 (S.D.Tex.1992); *Brizendine v. Southern Wipers, Inc. (In re Brown Transp. Truckload, Inc.)*, 144 B.R. 183, 187 (Bankr.N.D.Ga.1992).

## IV.

■ Courts have "recognized that the doctrine [of primary jurisdiction] need not be invoked where 'resort to the agency would plainly be unavailing in light of its manifest opposition or because it has already evinced its "special competence" in a manner hostile to petitioner.'" *Mobil Oil Corp. v. Dept. of Energy*, 520 F.Supp. 420, 448 (N.D.N.Y.) (quoting *Bd. of Educ. v. Harris*, 622 F.2d 599, 607 (2d Cir.1979), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981)), *rev'd on other grounds*, 659 F.2d 150 (Temp.Emer.Ct. App.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). *Accord Litman v. A. Barton Hepburn Hosp.*, No. 81–CV–234, 1983 WL 1780, at *5 (N.D.N.Y. Jan. 6, 1983); *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1312–15 (9th Cir.1977). Similarly, where an agency has displayed a "reluctance over [several] years to address the issues raised," referral to an agency under the doctrine of primary jurisdiction is futile. *Mobil Oil*, 520 F.Supp. at 448. *See O'Leary v. Moyer's Landfill, Inc.*, 523 F.Supp. 642, 647 (E.D.Pa.1981). The court in *Mobile Oil* concluded that four years was "sufficient time" for an agency "to have developed a corrective 'uniform policy'" regarding the issues before it. Since the agency had taken no action during that time, the court refused to refer the case. *Mobil Oil*, 520 F.Supp. at 448.

The Supreme Court has recognized a "futility" exception to the doctrine of exhaustion of administrative remedies, a doctrine very similar to primary jurisdiction.[3] *Walker v. Southern Ry.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966) (concluding that exhaustion of administrative remedies was not required where the agency "ha[d] never been current in its work," and had a "backlog of approximately 7½ years'"). *Accord Mobile Oil Corp. v. Dept. of Energy*, 520 F.Supp. 420, 440 (N.D.N.Y.1981) ("when the prescribed ad-

---

**3.** Both doctrines are "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies when a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending the referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

**116**

ministrative remedy is plainly inadequate, for instance, due to unreasonable administrative delay, exhaustion is unnecessary"), *rev'd on other grounds,* 659 F.2d 150 (Temp.Emer.Ct.App.1981), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *U.S. Alkali Export Ass'n v. United States,* 325 U.S. 196, 210, 65 S.Ct. 1120, 1128, 89 L.Ed. 1554 (1945) (where agency's "only function ... is to investigate, recommend and report" and where agency can neither order a remedy nor "make ... controlling finding[s] of law or fact," exhaustion is not required).

■ The trustee submitted the affidavit of Don Norman, owner of a transportation consulting firm which specializes in rate and tariff research. Mr. Norman has been personally involved in motor carrier research for approximately 40 years. He monitors pleadings and decisions filed with the ICC, focusing on issues involving the filed-rate doctrine.[4] Mr. Norman submitted with his affidavit a list of 361 ICC cases which he monitors. Almost all of these cases involve the issue of rate reasonableness. Most were filed with the ICC after court referral of undercharge claims by trustees of bankrupt motor carriers. Many of these cases date back to 1985 or 1986. As of the date of the affidavit (June 15, 1993), the ICC had not resolved one of these cases regarding rate reasonableness. This evidence is undisputed.

If referred to the ICC, the rate reasonableness issue in these adversary proceedings would go to the end of the line. Both parties conceded at oral argument that the determination of rate reasonableness issues involves fact-intensive analysis, and that resolution of other cases by the ICC would not likely resolve these cases. Moreover, even if ultimately addressed by the ICC, it is well-established that the ICC " 'does not have jurisdiction over claims challenging the reasonableness of motor carrier rates charged in the past nor au-

thority to order the waiver of undercharges. [It] address[es] the question of what rates should have been charged by a carrier only in an advisory capacity upon referral of a court.' " The ICC "has authority upon referral only to issue an advisory opinion and is without power to reject a filed tariff or to order waiver of undercharges." *Oneida Motor Freight v. Ormond Shops, Inc.,* 126 B.R. 431, 439–40 (D.N.J. 1991) (quoting *Interstate Commerce Commission, Ex Parte No. MC–177, Nat'l Ind. Transp. League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* 3 I.C.C.2d 99, 1986 WL 62969, 1986 MCC LEXIS 146, at *8–9 (Oct. 14, 1986)). *Accord Reiter v. Cooper,* — U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *F.P. Corp. v. Ken Way Transp., Inc.,* 821 F.Supp. 1032 (E.D.Pa. 1993); *Motor Carrier Audit & Collection Co. v. Sloan Valve Co.,* No. 89 C 4839, 1991 WL 38704 (N.D.Ill. Mar. 21, 1991). *See also Branch Motor Express Co. v. Caloric Corp.,* No. 86–4850, 1989 WL 3503 (E.D.Pa. Jan. 13, 1989) (refusing to follow the ICC's advisory opinion in a rate reasonableness case), *aff'd,* 914 F.2d 241 (3rd Cir.1990). This means that even if the rate reasonableness issue were referred to the ICC, it could not dispose of the matter. It could only issue an advisory opinion to this court, which would still have to resolve these adversary proceedings.

■ A court should "refer[ ] a matter to the ICC when it believes the agency's rate determination will assist in resolving the entire dispute." *Covey v. ConAgra, Inc.,* 763 F.Supp. 479, 482 (D.Colo.1991). The undisputed evidence is that referral of the rate reasonableness issue to the ICC will not assist in resolving this dispute. The ICC has an impenetrable backlog of rate reasonableness cases, some of which have been pending before the agency for as many as eight years. The "futility doctrine," as described by the Supreme Court

---

**4.** The filed-rate doctrine refers to the statutory requirement, under 49 U.S.C. §§ 10761(a) and 10762(a), that a common carrier file a tariff with the ICC, setting forth its rates for all transportation services, and that the carrier charge only the rates published in its filed tariffs. Un-

der the doctrine, equitable defenses to undercharge actions are not permitted. The only circumstance where a rate is not enforceable is if it is found to be unreasonable. *Louisville & N.R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915).

in *Walker v. Southern Ry.*, 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966) and *U.S. Alkali Export Ass'n v. United States*, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945), creates an exception to the normal exercise of primary jurisdiction here because referral of the rate reasonableness issue to the ICC cannot resolve the trustee's right to collect undercharges and will delay completion of administration of this bankruptcy for many years. The object of this Chapter 7 case is to fairly and efficiently liquidate assets and distribute dividends to creditors. Referral to the ICC will defeat the administration of this case.

An appropriate order will be entered.

***ORDER***

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the trustee's motion for partial summary judgment is granted. Referral of the contract carrier and rate reasonableness issues to the Interstate Commerce Commission is denied.

IT IS SO ORDERED.