In re J.H. WARE TRUCKING, INC., Debtor.

The PLAN COMMITTEE, Through Wendi S. ALPER, Distribution Agent, on Behalf of J.H. WARE TRUCKING, INC., Plaintiff,

v.

KIMBERLY CLARK CORPORATION, Defendant.

Bankruptcy No. 91–43310–399.
Adv. No. 93–4325.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Sept. 22, 1993.

**528**

Paul H. Lamboley, Newman & Holtzinger, P.C., Washington, DC, for defendant.

Thomas M. Pavelko, Chesterfield, MO, for plaintiff.

Norman W. Pressman, St. Louis, MO, for debtor.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This is a freight undercharge case. The instant opinion addresses only the issue of whether this Court should decide if J.H. Ware, Trucking, Inc. transported shipments for Kimberly Clark Corporation as a contract carrier or whether the doctrine of primary jurisdiction dictates referral of this issue to the Interstate Commerce Commission.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O).

### FACTS

Plaintiff, the Plan Committee in the Chapter 11 proceeding of J.H. Ware Trucking, Inc., ("Ware" or the "Debtor") instituted an adversary proceeding against Kimberly Clark Corporation, defendant, ("Kimberly Clark") to recover undercharges for freight transportation services. From September 1989 through July 1991, Ware transported various shipments for Kimberly Clark under its authority as either a motor "contract carrier" or as a "common carrier" as these terms are defined in the Interstate Commerce Act, 49 U.S.C. § 10101 et seq. Associated Transerv, Inc. ("ATS") was and is a licensed broker of interstate transportation. Kimberly Clark was one of ATS's shipper/receiver clients and Ware was one of ATS's motor carrier customers. During the period at issue, ATS and Ware entered into three separate written agreements each denominated "Contract Carrier Agreement" pursuant to which ATS hired Ware to transport shipments for Kimberly Clark. ATS paid Ware for its transportation services pursuant to rates allegedly negotiated under the Contract Carrier Agreements. Thereafter, Kimberly Clark paid ATS the shipping costs plus a brokerage fee.

After J.H. Ware Trucking, Inc. filed for relief under Chapter 11 of the United States Bankruptcy Code, Carriers Traffic Service, Inc. performed an audit of the Debtor's freight bills to determine whether Ware had charged rates lawfully required under the filed rate when it rendered transportation services. As a result of this audit, Plaintiff instituted various adversary proceedings to recover the difference between amounts due under Ware's filed rates and the amount actually charged and paid. Filed rates are the rates for transportation that a motor common carrier must publish and file with the Interstate Commerce Commission ("ICC") pursuant to 49 U.S.C. § 10761(a) (1993). Plaintiff asserts that pursuant to 49 U.S.C. § 10761(a), Kimberly Clark must pay the filed rates for transportation services because the tariff or "filed" rate is the applicable legal rate under the "filed rate doctrine."

Kimberly Clark first contends that it is not obligated for the common carrier rates because the shipments in question were not made under Ware's common carrier authority. Instead, they were made under a private contract carrier agreement. Second, Kimberly Clark asserts that even if common carriage is found, Ware's filed rates are unreasonable and therefore unenforceable. Lastly, Kimberly Clark asserts that procedurally, all of the transportation is-

sues should be referred to the ICC under the doctrine of primary jurisdiction.

Plaintiff posits that Ware rendered transportation services as a common carrier and that despite any agreements with ATS, Kimberly Clark is liable for shipments at the filed rate. Procedurally, Plaintiff asserts that the ICC does not possess *exclusive* jurisdiction over either the "contract carrier" or "rate reasonableness" issues involved in this adversary and that at a minimum, before the Court should consider referral, Kimberly Clark must present a threshold showing of rate unreasonableness. Because filed rates are not applicable to contract carriage, the first issue this Court must resolve is whether the carriage was by common or contract carrier. If by common carrier, then the question of the reasonableness of the tariff rates arises. Accordingly, the Court must determine whether it should decide the initial contract carriage question or whether this question should be referred to the ICC under the primary jurisdiction doctrine.

### DISCUSSION

### 1. *The Filed Rate Doctrine*

■ A motor carrier acts either as a "motor common carrier" (49 U.S.C. § 10102(14) (1993)) or as a "motor contract carrier." (49 U.S.C. 10102(15) (1993). This distinction is relevant because common carriers are subject to the "filed rate doctrine" while the ICC, through exercise of its statutory authority, has exempted motor contract carriers from the requirements of the filed rate doctrine. *Atlantis Express, Inc. v. Standard Transp. Services, Inc.,* 955 F.2d 529, 533 (8th Cir.1992) *citing, Exemption of Motor Contract Carriers from*

*Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd sub nom. Central & Southern Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). The filed rate doctrine, codified at 49 U.S.C. § 10761(a), is at the heart of motor carrier regulation. *Id.* The doctrine provides that a common carrier "may not charge or receive a different compensation for that transportation than rates specified in the tariff." *Brizendine v. Baldwin Hardware Corp., (In re Brown Transport Truckload, Inc.),* Civ. A. No. 91–6800, 1992 WL 209980, at *2 (E.D.Pa. Aug. 24, 1992).[1]

■ The ICC and the courts have historically interpreted the filed rate doctrine very strictly and have not permitted either a shipper's ignorance or a carrier's misquotation of the applicable rate to serve as a defense to a common carrier's collection of the filed rate. *Atlantis,* 955 F.2d at 531. Indeed, the Supreme Court recently stated that any deviation from the filed rate is not permitted and that deviation can result in the imposition of civil or criminal sanctions. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). In *Maislin,* the Supreme Court reasoned that to relieve shippers of the filed rate whenever they had negotiated another rate with a common carrier was flatly inconsistent with the purposes of the Interstate Commerce Act.[2] Because of the strict application of the filed rate doctrine to common carrier transportation and the exemption afforded contract carriers, contract carriage constitutes an affirmative defense to recovery on a common carrier undercharge claim. In its Motion for Stay and Referral, Kimberly Clark

1. The filed rates referred to in § 10761(a) are the rates for transportation which motor common carriers must publish and file with the ICC pursuant to 49 U.S.C. § 10762(a)(1) (1993).

2. Initially, motor carrier regulations were designed to protect common carriers against competition from contract carriers. Part and parcel of this policy was the duty to file rates under 49 U.S.C. § 10762 and the obligation to charge only those rates in order to prevent price discrimination. *Maislin,* 497 U.S. at 127, 110 S.Ct. at 2766.

The policy has, however, evolved into one designed to promote competitive and efficient transportation services by relaxing regulations. Hence, pursuant to its authority under § 10761(b), the ICC has relieved contract carriers from the obligations of the filed rate doctrine. For a precise history of interstate commerce regulation, *see, Central & Southern Motor Freight Tariff Ass'n,* 757 F.2d 301 (D.C.Cir.) *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985).

asserts that the doctrine of primary jurisdiction requires referral of this question to the ICC. Plaintiff opposes such referral.

## 2. *The Doctrine of Primary Jurisdiction*

 The doctrine of primary jurisdiction is much like the doctrine of administrative exhaustion of remedies. It is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *United States v. Western Pac. R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–1565, 1 L.Ed.2d 126 (1956). "Primary jurisdiction ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* No fixed formula exists for applying the doctrine of primary jurisdiction. In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. *Id.* at 64, 77 S.Ct. at 165 (citations omitted). The reasons for the doctrine include promotion of uniformity in statutory and regulatory construction, and utilization of the agency's specialized knowledge. *Atlantis*, 955 F.2d at 532. Factors to be considered are "whether the issues of fact raised in the case are not within the conventional experience of judges; or whether the issues of fact require the exercise of administrative discretion, or require uniformity and consistency in the regulation of the business entrusted to a particular agency." *Jennings v. Tamaqua Cable Products, Corp., (In re Roberts Carrier Corp.)*, 157 B.R. 109, 111 (Bankr.M.D.Tenn., 1993) *quoting, Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir.1989) (citation omitted). Under these guidelines, the Court must determine whether a decision regarding the nature of transportation, common versus contract carriage, is so crucial to the uniform administration of the transportation industry and the ICC's regulatory scheme that the issue of carriage must be referred to the Commission

for determination. Previously, the Eighth Circuit required such referral.

## 3. *Application of Doctrines in the Eighth Circuit*

In *Atlantis*, the Eighth Circuit considered, among other transportation issues, whether the common carrier versus contract carrier issue should be referred to the ICC for determination. After consideration of the statutes and regulations governing contract carriage, the Eighth Circuit held that ambiguity between the statutes and regulations and the ICC's stated policy justified referral to the ICC of the contract carrier issue. Under the Interstate Commerce Act, a motor contract carrier is defined as:

> a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—
>
> > (i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or
> >
> > (ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B) (1993).

The ICC's regulations defining "continuing agreements" explain:

> no contract carrier by motor vehicle ... shall transport property for hire ... except under special and individual contracts or agreements which **shall be in writing,** shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments....

49 C.F.R. § 1053.1 (1990) (emphasis added).

However, in a published statement, the ICC articulated that "[t]he Commission does not 'invalidate' contracts for contract carriage, and it is not our policy to find a lack of contract carriage based on simple, technical oversights or omissions." *General Mills, Inc.*, Petition for Declaratory Order, 1992

WL 57551, *6 1992 ICC Lexis 40, at *19, 8 I.C.C.2d 313 (March 9, 1992). Based solely upon the ambiguity in this statement and the relevant language in the statutes and regulations requiring written, bilateral agreements, the Eighth Circuit referred the contract carrier issue to the ICC with the "hope that the ICC [would] articulate an explanation for its action that clarifies the above statement." *Atlantis*, 955 F.2d at 534.

Since the Eighth Circuit's 1992 opinion in *Atlantis*, the ICC has repealed its regulation at 49 C.F.R. 1053, eliminating the requirement that contracts be in writing and that the other technicalities of the regulation be met. *See*, ICC Ex Parte No. MC–198, *Contracts for Transp. of Property*, 1992 WL 113532, 1992 MCC Lexis 59, 8 I.C.C.2d 520 (May 5, 1992). In place of the technical requirements of the repealed regulations, the Commission has adopted a "totality of circumstances" test. *See*, *Contracts*, 1992 WL 113532, at *6–9, 1992 MCC Lexis 59, at *17–18; *General Mills*, 1992 WL 57551, at *6, 1992 ICC Lexis 40, at *20. As a result, the ambiguity that formed the basis of the Eighth Circuit's referral in *Atlantis* no longer exists.

Subsequent to the ICC's May 5, 1992 repeal of the technical requirements for contract carriage, the Bankruptcy Court for the Middle District of Tennessee considered whether the contract carrier issue should be referred to the ICC. In *Jennings v. Tamaqua Cable Products, Corp.*, (*In re Roberts Carrier Corp.*), 157 B.R. 109, (Bankr.M.D.Tenn., 1993) Judge Lundin concluded that under the "totality of circumstances test" the contract carrier issue turns on the facts of each specific case and is a "run-of-the-mill legal question not obviously within the special competence of the ICC." *Id.* at 111. Instead, the determination is fact laden and requires the consideration of relevant facts which courts do every day in contract disputes. *Id.* at 111.

■ There continues to be a split among courts regarding application of the doctrine of primary jurisdiction in those cases determining contract carrier status. *See*, *Brizendine v. Baldwin Hardware Corp.*, 1992 WL 209980, Civ.A. No. 91–6800, (E.D.Pa. 1993) (holding that the Commission retained primary jurisdiction to determine whether transportation is contract or common carriage after repeal of the regulations) and *contra*, *Brizendine v. Reliable Corp.*, 152 B.R. 224 (N.D.Ill.1993); *Security Serv., Inc. v. Johnson Matthey, Inc.*, 1992 WL 176497, Civ.A. No. 921–6699 (E.D.Pa., July 15, 1992) (holding that the general jurisdiction of the I.C.C. does not bar the court from determining whether the parties operated pursuant to contract or common carriage). This Court holds that the better line of cases are those that now permit courts to determine the contract carrier issue as a preliminary matter. There is nothing unique to courts in applying a totality of the circumstances test to determine the nature of carriage. Indeed, as Judge Lundin pointed out in *Jennings v. Tamaqua*, bankruptcy courts employ this test on a regular basis when considering questions of good and bad faith filings for purposes of dismissal and plan confirmation. *Id.* at 113. A "court is not required to defer factual issues to an agency under the doctrine of primary jurisdiction if those factual issues are of the sort that the court routinely considers." *Marshall*, 874 F.2d at 1377. Determining the existence of a contractual relationship based upon a totality of circumstances test is a factual issue routinely undertaken by this Court. Thus, absent confusion in the policy of the ICC which would suggest an invitation for referral to obtain clarification of the agency's policy, this Court concludes that referral of the contract carrier issue is not warranted.

The Court observes, however, that in its order repealing the writing requirement and implementing a factual determination of contract or common carriage, the Commission specifically retained its self-professed primary jurisdiction over the carrier issue. "At the outset, we emphasize that the Commission has primary jurisdiction to determine whether transportation subject to its regulation is contract carriage or common carriage." *Contracts*, 1992 WL 113532, at *5, 1992 MCC Lexis 59 at *18. These statements by the ICC, nonetheless,

do not persuade the Court that the doctrine of primary jurisdiction mandates referral. The ICC's statement above derives from its prior holding in *General Mills*, which in turn was derived from the Eighth Circuit's conclusion in *Atlantis*. *See, Contracts*, 1992 WL 113532, at *5, 1992 MCC Lexis 59, at *18. Because referral of the contract carrier issue in *Atlantis* rested solely on the ambiguity in the Commission's policy and its regulations as they existed at that time, *Atlantis* no longer provides persuasive reasoning for the ICC's claim of primary jurisdiction.

Moreover, while leaving the determination of what constitutes contract or common carrier transportation to the state and federal courts may result in conflicting standards of what constitutes valid contract carriage, ((*See* ), *Contracts*, dissent of Commissioner Simmons, 1992 WL 113532 at *9, 1992 MCC Lexis 59 at *26), the solution to such a problem lies with Congress. Courts are well equipped to apply a totality of the circumstances test to determine the nature of transportation and absent a compelling need for the expertise of an administrative agency, the doctrine of primary jurisdiction does not compel referral.

Finally, the Court is mindful that its own administrative concerns demand prompt resolution of Plaintiff's undercharge proceedings and a prompt resolution argues in favor of an immediate determination of appropriate issues by this Court. The underlying bankruptcy case is a liquidating Chapter 11 in which the plan of liquidation has already been confirmed. Timely and meaningful distribution to creditors hinges on the expeditious conclusion of Plaintiff's rate adversary proceedings. Regardless of the efficiency with which an agency conducts its review, referral inherently adds an additional level of adjudication which ultimately will delay conclusion of the bankruptcy case and distribution to creditors. Accordingly, for the reasons stated above,

IT IS ORDERED that Kimberly Clark's Motion to Stay and for Referral with re-spect to the contract carrier issue is DENIED, without prejudice.

IT IS FURTHER ORDERED that Court shall conduct a hearing on the limited issue of whether Ware provided services to Kimberly Clark as a contract or common carrier on the **27th day of October, 1993, at 11:00 a.m.**, in U.S. Bankruptcy Courtroom No. 2, 7th Floor, One Metropolitan Square, 211 North Broadway, St. Louis, Missouri, 63102–2734. All memoranda, if any, in support of Plaintiff's or Kimberly Clark's position on this limited issue shall be filed with the Court and a copy for Chambers, five (5) days prior to the hearing.. All other issues raised in Kimberly Clark's Motion for Stay and Referral remain under submission. If the Court subsequently holds that Ware performed contract carriage for Kimberly Clark, Plaintiff may abandon its cause of action or the matter may be dismissed on the Court's own motion. Alternatively, if the Court determines that Ware performed common carrier transportation services on behalf of Kimberly Clark, the Court may refer the issue of rate unreasonableness, as well as other transportation issues as the Court deems appropriate, to the Interstate Commerce Commission.